**PATTERSON FARM, INC., a South Dakota corporation, by and through its president Ronald C. Patterson, Plaintiff,**

v.

**The CITY OF BRITTON, SOUTH DAKOTA, a municipal politic, Defendant.**

**No. Civ. 96–1043.**

United States District Court,
D. South Dakota,
Northern Division.

Sept. 30, 1998.

---

Paula Sue Conard, St. Petersburg, FL, for Plaintiff.

Richard A Sommers, Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, SD, for Defendant.

## ORDER ON MOTIONS

KORNMANN, District Judge.

### INTRODUCTION

[¶ 1]   Patterson Farm, Inc., is a farming corporation located near Britton, South Dakota.   It owns the Northeast Quarter of Section Seven and the Northwest Quarter of Section Eight in Township 127 North, Range 57 West,[1] Marshall County, South Dakota. The City of Britton ("City") is a municipal corporation located in Marshall County, South Dakota.   Plaintiff instituted this action under the citizen's suit provision of the Clean Water Act (CWA).   33 U.S.C. § 1365 (1982). Plaintiff also included pendent state law claims under SDCL 34A–2–21 and seeks injunctive relief and damages.

[¶ 2]   In Counts I and V of the complaint, plaintiff asserts as a pendent state law claim that the City violated the one-time irrigation order issued by the South Dakota Department of Environment and Natural Resources (DENR) because the ground was saturated and frozen at the time of irrigation and no warning signs were posted at the border of the irrigation site, thus violating certain conditions of DENR's order.   Plaintiff also claims that the municipal lagoons were negli-

---

1.  Counts I–IV of plaintiff's complaint concern Section Seven and Counts V–VIII concern Section Eight.

gently maintained which resulted in the unlawful drainage of sewage, pollutants, and contaminates on to plaintiff's property. These alleged circumstances constitute nuisance under state law.

[¶ 3] In Counts II and VI of the complaint, plaintiff asserts another pendent state law claim that the City was negligent, under SDCL 20-9-1, in its operation and maintenance of the industrial and municipal lagoons based on the same claimed facts referred to above. Counts III and VII of the complaint allege violations of state environmental statute, SDCL 34A-2-21. In Counts IV and VIII, plaintiff claims the City violated federal statutes, 33 U.S.C. §§ 1311, 1365, when it violated (1) the order issued by DENR; (2) other effluent standards or limitations; and, (3) best management practices as they relate to the municipal lagoons. Plaintiff also claims the City violated federal law when it operated the industrial lagoons without a National Pollutant Discharge Elimination System (NPDES) permit and allowed an unauthorized discharge of sewage and pollutants into navigable waters.

[¶ 4] In plaintiff's original complaint, the Environmental Protection Agency (EPA) and the DENR were included as defendants. These agencies filed motions to dismiss which were granted on September 27, 1997, Doc. 36.

[¶ 5] The City filed a motion for summary judgment on March 27, 1998, Doc. 38. The City claims that the Court lacks subject matter jurisdiction because there is no evidence of CWA violations, and thus, no federal question exists, resulting in a lack of jurisdiction to hear the pendent state law claims. The City also claims that plaintiff lacks standing to bring the citizen's suit because all alleged violations of the CWA are past violations for which there can be no recovery under the teaching of *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Finally, the City argues that because it has no liability insurance, the doctrine of sovereign immunity applies to the pendent state law claims, and thus, it is entitled to summary judgment under SDCL 21-32A-1 and SDCL 32A-3.

[¶ 6] Plaintiff filed a cross motion for summary judgment on April 6, 1998, Doc. 45. Plaintiff restates the claims set forth in the complaint. First, plaintiff claims the City violated the DENR order dated November 7, 1995, by irrigating water from its industrial lagoons that may have exceeded effluent standards when the ground was both frozen and saturated. Second, plaintiff claims the City violated the DENR permit issued for the municipal lagoons when it failed to comply with monitoring requirements, including sampling the water being discharged from holes in two different dikes at the municipal lagoon facility. According to plaintiff, these violations of the permit and order constitute negligence per se. Third, plaintiff alleges continuing violations of the DENR permits for both the industrial and municipal lagoons, in that: (1) the City has failed to meet inspection and record keeping requirements; and (2) chemical analyses indicate that water and soil on plaintiff's land continue to be significantly salinized by lagoon seepage. Finally, plaintiff contends that because Congress intended for citizen's suit provisions to be express remedies under the CWA, the Act overrides applicable state law, and the doctrine of sovereign immunity does not apply for any reason. Moreover, plaintiff contends that the City failed to raise this defense in its Answer to the complaint, and thus, is barred from raising it at the summary judgment stage of the proceedings under Fed.R.Civ.P. 8(b).

## DECISION

[¶ 7] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to

any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995). On cross motions for summary judgment, this Court will consider each motion separately, drawing inferences against each movant in turn on the disputed facts. *Blackie v. Maine,* 75 F.3d 716 (1st Cir.1996); 73 Am.Jur.2d *Summary Judgment* § 30 (1974).

[¶ 8] Section 505(a) of the CWA does not confer federal jurisdiction over citizen's suits for wholly past violations. *Gwaltney,* 484 U.S. at 66, 108 S.Ct. 376. However, if a plaintiff makes a good-faith allegation of continuous or intermittent violations, jurisdiction will attach; proof of such allegation is not necessary to invoke federal jurisdiction. *Id.* The Court finds that plaintiff has alleged, in good faith, continuous violations of the CWA by the City, including the failure to abide by the inspection and record keeping provisions of the NDPES permits. *Public Interest Research Group v. Magnesium Elektron, Inc.,* 123 F.3d 111 (3d Cir.1997); *Friends of the Earth, Inc. v. Crown Central Petroleum Corp.,* 95 F.3d 358 (5th Cir.1996); and *Sierra Club v. Simkins Indus.,* 847 F.2d 1109 (4th Cir.1988).

## I. Cross Motions for Summary Judgement

### A. *Industrial Lagoon Violations*

1. Operation without a NPDES permit

█ [¶ 9] Plaintiff claims the City violated, prior to September 26, 1997, the CWA by operating the industrial lagoon facility without a NPDES permit as required by 33 U.S.C. § 1341. The City argues that it did not need a NPDES permit for the industrial lagoon facility and obtained one as a "no

discharge" facility only to expedite authorization for irrigation in the future should it become necessary. Therefore, the City claims that operating without a permit until that time cannot form the basis of any actionable claim.

[¶ 10] The relevant federal regulation supports the City's argument that no NPDES permit was required for the industrial lagoon facility as a "no-discharge" facility. 33 U.S.C. § 1342; 40 C.F.R. §§ 122.2, 122.3(c) (1997). The industrial lagoon facility falls within the regulatory definition of a "publicly owned treatment works,"[2] and as such is specifically excluded from the NDPES permit requirement provisions. 40 C.F.R. §§ 122.1–122.3. The City is therefore entitled to summary judgment as to Counts IV and VIII with respect to this alleged violation.

2. Alleged violation of DENR order

█ [¶ 11] Plaintiff also claims that the City violated DENR's one-time discharge authorization dated November 7, 1995, by failing to abide by ground condition restrictions and water sampling requirements. The City denies this alleged violation, claiming that it did adhere to the order's water sample testing requirements, and cites the deposition testimony of Randy Hedge, the maintenance foreman for the City, to support its position. The City further contends that plaintiff has offered no acceptable evidence regarding rainfall over a three-month period or ground conditions at the time of irrigation to prove that it violated the authorization. Moreover, even if such a violation could be shown, it would be a purely past violation of the CWA, and thus would be barred under the citizen's suit provision of the Act. 33 U.S.C. § 1365; *Gwaltney,* 484 U.S. at 59–60, 108 S.Ct. 376.

█ [¶ 12] Viewing the facts in the light most favorable to the plaintiff, the Court agrees with the City that the alleged violation, assuming the allegation to be true, is a wholly past violation of the CWA. The DENR order authorizing a *one-time discharge* from the industrial ponds is, by its

---

**2.** "[A]ny device or system used in the treatment (including recycling and reclamation) of municipal sewage or industrial wastes of a liquid nature

which is owned by a 'State' or 'municipality.' " 40 C.F.R. § 122.2.

very nature, incapable of being violated in the future. For the City to violate the conditions set forth in the order in the future would require it to seek another discharge authorization from DENR because it is currently operating under a NPDES permit that classifies the industrial lagoon facility as a "no discharge" facility. *Gwaltney* makes clear that citizen's suits under the CWA cannot be maintained for wholly past violations of the Act. 484 U.S. at 64, 108 S.Ct. 376. *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1173 (5th Cir.1987), holds that multiple, sporadic, and past violations of various effluent limitations contained in NPDES permits may not form the basis of citizens' lawsuits under CWA. The crux of the rationale in *Gwaltney* is that "the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." 484 U.S. at 59, 108 S.Ct. 376. Otherwise, the notice provisions of § 1365(a) would be rendered gratuitous. *Id.* at 59–60, 108 S.Ct. 376. Only federal and state regulatory agencies may seek action against an entity for purely past violations of environmental laws and regulations, and in this case, they apparently chose not to do so. 33 U.S.C. § 1319(d); *Gwaltney*, 484 U.S. at 58, 60–61, 63 n. 4, 108 S.Ct. 376; *Tull v. United States*, 481 U.S. 412, 425, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987). Therefore, even if the ground conditions were frozen at the time of irrigation and the City did fail to administer appropriate water samples as required by the DENR order, plaintiff may not be granted an injunction or civil penalties against the City under 33 U .S.C. § 1365 because the Court lacks the appropriate subject matter jurisdiction. This makes unnecessary an independent determination as to whether or not the violations occurred with respect to the industrial lagoons. The City's motion for summary judgment is granted as to Counts IV and VIII as those counts relate to the alleged violation of the DENR order.

### 3. SWDCI Report and continued discharge from the industrial cells

[¶ 13] Plaintiff contends that the unsatisfactory Surface Water Discharge Compliance Inspection (SWDCI) Report also proves non-compliance, and that poor prior maintenance of the industrial cells has resulted in conditions that allow discharges into the groundwater. The City contends that the SWDCI Report does not demonstrate non-compliance with the CWA, and that the problems identified in the report were "relatively minor in nature." The City points to the deposition testimony of DENR officials and Donald Larson, an expert witness hired by plaintiff, to support its claim that no violations of the CWA exist, even if the problems alleged are true.

[¶ 14] Plaintiff cites no legal authority to the effect that an unsatisfactory compliance inspection report of a state agency, standing alone, violates the CWA. One district court has held that an unsatisfactory compliance inspection report does not represent the "commencement" of enforcement proceedings by a state or federal agency for violations of the CWA; rather, an order and notice of enforcement proceedings is required. *Public Interest Research Group v. Elf Atochem North America, Inc.*, 817 F.Supp. 1164, 1172–73 (D.N.J.1993). The court also noted the significance of the fact that the report made no mention of formal charges, penalties, or hearing. *Id.* Similarly, in the instant case, the SWDCI Report issued by DENR for the industrial lagoon facility did not list any formal charges or penalties. In light of the holding in *Elf Atochem*, the Court is unconvinced that an unsatisfactory review, by itself, is sufficient to constitute a violation of the CWA. Moreover, a report issued nearly one year prior to the initiation of this litigation might well fall within the purview of *Gwaltney*. Therefore, it is only actions that may have occurred and continue to exist as a result of the unsatisfactory operation and management of the industrial lagoon facility that could constitute violations of the CWA.

[¶ 15] In a citizen suit brought under the CWA, the defendant has the burden at the summary judgment stage to demonstrate that the plaintiff's allegations of a continuous or intermittent violation do not raise a genuine issue of material fact. *Carr v. Alta Verde Indus.*, 931 F.2d 1055 (5th Cir.1991). The City cites the deposition testimony of Larson and DENR officials, including those

who conducted the compliance inspection, to support its position that the operation of the industrial lagoon facility has been in full compliance with the CWA. Yet, plaintiff offers sufficient evidence that would allow a reasonable trier of fact to conclude that the City is in continuing violation of the CWA. As such, neither party would be entitled to summary judgment on this aspect of the alleged industrial lagoon violations as they relate to Counts IV and VIII of plaintiff's complaint.

■ [¶ 16] Having said this, there is another hurdle for plaintiff. The problem for plaintiff is the limitation of the CWA's coverage to the "waters of the United States." 33 U.S.C. § 1362(7). "The Clean Water Act is a broad statute, reaching waters and wetlands that are not navigable or even directly connected to navigable waters." *Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 964 (7th Cir.1994) (citing *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985)). Yet, "[n]either the Clean Water Act nor the EPA's definition asserts authority over groundwaters, just because these may be hydrologically connected with surface waters." *Id.* at 965; *see also* 40 C.F.R. § 122.2. The Seventh Circuit explains in *Village of Oconomowoc Lake* that it was not an oversight by Congress to omit groundwaters from the regulations, and that on several occasions the EPA has decided not to amend the definition of "waters of the United States" to include groundwaters. *Id.* at 965–66. In *Washington Wilderness Coalition v. Hecla Mining Co.*, 870 F.Supp. 983, 989 (E.D.Wash.1994), the plaintiff claimed that large volumes of discharge were seeping and leaking from the company's tailing ponds into the soil and groundwater, and thereafter into the surface waters. In determining whether or not the CWA's prohibition against discharges into "navigable waters" encompasses discharges that migrate through groundwater, the district court analyzed the legislative history of the CWA and held that, despite "the Act's purpose to regulate as fully as possible all sources of water pollution, ... Congress did not intend to include isolated groundwater as part of the 'navigable waters.'" *Id.* Therefore, "[a]s the statute and regulations stand, ... the federal govern-ment has not asserted a claim of authority over artificial ponds that drain into groundwaters." *Village of Oconomowoc Lake*, 24 F.3d at 966.

[¶ 17] In light of these holdings, this Court lacks subject matter jurisdiction over plaintiff's claim that the poor operation and maintenance of the industrial lagoons is causing discharges into the groundwater. Even if plaintiff alleged that the discharges were migrating to surface water, the Court would still lack subject matter jurisdiction under the rationale of *Hecla Mining Co.* in which the district court undertook a careful review of the CWA's legislative history to support its holding. Thus, the alleged discharges can only be considered as part of plaintiff's pendent state law claims. The City is therefore entitled to summary judgment as to Counts IV and VIII with respect to all alleged industrial lagoon violations.

**B. *Municipal Lagoon Violations***

■ [¶ 18] Plaintiff claims that on or about May 6, 1996, holes were reported in two different dikes at the municipal lagoon facility—one in the storm water dike and one in the dike between wetlands and the storm water pond—and that water continues to seep out of the lagoons and enter the groundwater. Plaintiff contends that the City did not follow the monitoring requirements of its DENR permit, including sampling water that was being discharged from these holes. Plaintiff further contends that the area claimed by the City to be a storm water pond does not receive storm water from the City; rather, storm water enters a drainage ditch for which the City filed a Vested Drainage Right Registration Form and map with the Marshall County Register of Deeds on February 25, 1992. The City argues that because storm sewers are exempt from any state and federal regulations if the community has a population of less than 100,000 people, and because there are no restrictions on running storm sewer water into a wetland area, any alleged leak from the city storm sewer system would not be classified as a discharge. Therefore, the City claims it was not required to take water samples or repair the holes in the storm sewer lagoon. Fur-

thermore, the City contends that even if the storm sewer lagoon were subject to federal and state regulations, the alleged violations would again be wholly past violations, and thus not actionable under *Gwaltney.*

[¶ 19] The Court agrees with the City that plaintiff's claims regarding violations of the CWA in the operation of the municipal lagoons are without legal merit. First, storm sewer systems are indeed exempt from federal and state regulation for a municipality of the City's size. 40 C.F.R. § 122.26(a), (b). Second, although plaintiff's expert engineer may be able to discern that storm water enters a drainage ditch for which the City has vested drainage rights, this does not transform the storm water dike and storm sewer lagoon into new and different entities or into a type of discharge system now subject to federal and state regulations. Finally, the Court's analysis in the preceding section regarding the exclusion of groundwater from the definition of "navigable waters" under the CWA applies to these alleged violations as well. Therefore, summary judgment is granted in favor of the City as to Counts IV and VIII as they relate to the alleged municipal lagoon violations.

## C. *Ongoing Violations*

■ [¶ 20] Plaintiff contends that the City continues to violate its DENR permits for both the industrial and municipal lagoons by failing to abide by requirements as to inspection and retention of records. Plaintiff further contends that the City continues to violate the permits because of continued leakage or seepage from the lagoons as evidenced by water and soil chemical analysis. The City maintains that it has not violated the inspection and retention of records provisions of its permits; however, it relies only on the general findings of DENR officials to support its argument rather than producing the records in question. On the issue of continued leakage or seepage, the City points out that plaintiff's experts cannot identify the cause of the alleged soil defects on plaintiff's property, nor can they conclude that the lagoon is leaking in excess of legal rates.[3]

[¶ 21] As discussed in the preceding sections, the Court lacks jurisdiction over plaintiff's claims of continued leakage or seepage of the lagoons because groundwater is not covered by the CWA. We are left with the alleged ongoing violations of the DENR permits. The allegation that the City has failed to meet inspection and record keeping requirements in violation of the permits is initially quite persuasive. Plaintiff cites *Public Interest Research Group v. Hercules, Inc.* for the proposition that any subsequently discovered monitoring, reporting, or record keeping violations that are directly related to discharge violations may be included in a citizen suit even after the 60–day notice provision has issued. 50 F.3d 1239 (3d Cir. 1995). The Third Circuit explained:

> [B]ecause a permit violation occurs through an excess discharge of a pollutant into the water and because compliance with a permit limitation is tracked though monitoring, reporting and record keeping, we conclude that a monitoring, reporting and record keeping violation, which is an aspect of the permit requirement involved in a noticed discharge violation, should be an element of that same overall episode.

*Id.* at 1247.

[¶ 22] Although plaintiff did not cite *Sierra Club v. Simkins Indus.*, the holding in this case strongly supports its position regarding the allegation of ongoing violations. 847 F.2d 1109 (4th Cir.1988). In *Simkins Indus.*, the Sierra Club alleged in good faith a continuing violation of the CWA, giving it standing to sue under the citizen suit provision of the Act. The Sierra Club claimed the company's discharge permit required it to take samples on a monthly basis, maintain records, and file reports, but that the company had not filed a complete report at the time the lawsuit was filed, even though it had been operating under the permit for three years. *Id.* at 1114. The court held that the company's failure to file reports which were required by its discharge permit could be the subject of a citizen suit, and a per day penalty could be imposed upon the company for failing to file the required reports.

---

**3.** According to Ken Woodmansey, a natural resources engineer with DENR, a "no discharge" facility of the kind operated by the City is allowed leakage or seepage of 1/16″ per day.

[¶ 23] Once a plaintiff has made a good faith allegation of ongoing violations, he or she is required to produce some evidence in support of the allegation to survive a motion for summary judgment. However, because the City has not provided plaintiff in this case with all of the relevant records, the City's motion for summary judgment cannot prevail. Nor has the City offered sufficient evidence to refute the allegation that it has violated its NDPES permits by failing to abide by the inspection and record keeping provisions; in its motion for summary judgment as well as its response to plaintiff's motion for summary judgment, the City appears to concede that some violations did occur. Summary judgment for either party is therefore inappropriate.

[¶ 24] However, another obstacle for plaintiff may present itself at this point. If the Court lacks subject matter jurisdiction over the alleged discharge violations, and therefore, plaintiff lacks standing to pursue its CWA claims against the City, does it also lack standing to pursue the claims that are based on the City's inspection and record keeping violations? The Third Circuit recently addressed this precise issue, noting the apparent split in the Circuits. *Public Interest Research Group v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir.1997). In *Simkins Indus.*, only monitoring and reporting violations were alleged; nevertheless, the Fourth Circuit did find that the plaintiff had standing because such violations hindered environmental planners and policymakers "who might undertake to remedy the effects of any pollution." 847 F.2d at 1113. As the Third Circuit explains in *Magnesium Elektron*, this reasoning assumes "that the defendant's effluent discharges posed a real threat to the environment." 123 F.3d at 124. The Fifth Circuit, on the other hand, has adopted a bright line rule that " 'an individual without standing to sue for discharge violations, a fortiori, lacks standing to sue for reporting violations.' " *Id.* (quoting *Friends of Earth, Inc. v. Crown Central Petroleum*, 95 F.3d 358, 362 (5th Cir.1996)). The Third Circuit decided not to adopt this bright line rule, reasoning that "it is at least possible that some plaintiff in the future might allege a specific and concrete injury arising from a

defendant's failure to monitor and report its effluent discharges ..." *Id.* However, the court concluded that the plaintiff in *Magnesium Elektron* lacked standing because the alleged "injury" was not redressable. *Id.*

[¶ 25] Neither the United States Court of Appeals for the Eighth Circuit nor apparently any District Court in the Eighth Circuit has been called upon to decide a question similar to that presented here. This Court finds the rule developed by the Fourth Circuit to be the proper rule and holds that plaintiff does have standing to pursue its claims against the City for the alleged ongoing violations of the terms and conditions of the NPDES permits. As explained in *Simkins Indus.*, because the definition of an "effluent standard or limitation" under 33 U.S.C.. § 1365(f)(6) includes "*a permit or condition thereof* issued under § 1342," a violation of permit conditions is a violation of an effluent standard or limitation. 847 F.2d at 1115 (emphasis added). Moreover, "[u]nless a permit holder monitors as required by the permit, it will be difficult if not impossible for state and federal officials charged with enforcement of the Clean Water Act to know whether or not the permit holder is discharging effluents in excess of the permit's maximum levels." *Id.*

[¶ 26] The Court finds that if the City is not complying with the inspection and record keeping requirements of the NPDES permits, it would be more difficult for government officials and others to identify potentially harmful effects to the environment from the operation of the municipal and industrial lagoon facilities and to plan appropriate remedial action. Although the City's NPDES permits specify that the facilities are currently "no discharge" facilities, the industrial lagoon facility did seek a one-time irrigation order from DENR in 1995. In light of the above normal precipitation levels in Marshall County in the last few years, another one-time irrigation by either facility may become necessary again. The City concedes that the reason it obtained the permits for the facilities was to make it easier to obtain authorization for discharges in the future. Therefore, the City's motion for summary judgment will be denied as to the alleged

ongoing violations of the terms and conditions of the NPDES permits. Although the City concedes that some minor violations of the permit conditions did occur, there are insufficient facts as to the nature and duration of such violations for the Court to calculate civil penalties; thus, plaintiff's motion for summary judgment with respect to these violations will be denied as well.

### D. *Notice and Sovereign Immunity*

[¶ 27] Contrary to plaintiff's allegation, the City did raise, as an affirmative defense, the doctrine of sovereign immunity in its Answer to the Complaint. As clarified in the City's brief in opposition to plaintiff's motion for summary judgment, this defense is raised only in response to the pendent state law claims. The City acknowledges that it is not immune by reason of sovereign immunity from enforcement of the CWA if a violation of the Act is found to exist. Therefore, under SDCL 21–32A–1, the City is immune from liability for the state law claims of nuisance and negligence because liability for pollution is expressly not covered by the City's insurance policy. The City is therefore entitled to summary judgment as to Counts I, II, III, V, VI, and VII.

## II. Motion to Compel the Production of Documents

[¶ 28] Plaintiff filed a motion to compel the production of documents, Doc. 37. The City made no objections to the motion to show why the discovery request at issue is improper. *EEOC v. Klockner H & K Machs.*, 168 F.R.D. 233 (E.D.Wis.1996). The Court finds that plaintiff has adequately established that the City has unjustifiably resisted discovery despite good faith attempts to secure the disclosures without court intervention under Fed.R.Civ.P. 37(a)(2)(A). Because the discovery sought by plaintiff is relevant to its claim of ongoing violations of the NPDES permits in Counts IV and VIII, and because the documents sought are not privileged material, the Court hereby grants plaintiff's motion for an order compelling the production of documents. Plaintiff is directed under Fed.R.Civ.P. 37(a)(4)(A) to submit an affidavit, which is to include counsel's time

records, requesting the amount of reasonable expenses, including attorney's fees, incurred in making this motion and compelling production.

## III. Motion to Determine Defendant's Responsibility for Expert Witness Fees

[¶ 29] The City filed a motion to determine which party is responsible for expert fees, Doc. 43. The City argues that it is not obligated to pay for plaintiff's experts' time to review their depositions. Because it is a deponent's right to request the opportunity to read, review, and make changes to the deposition under Fed.R.Civ.P. 30(e), the City contends that it is plaintiff's or the experts' responsibility to pay for the relevant fees. The issue is whether the time spent by an expert witness reviewing the deposition transcript under Fed.R.Civ.P. 30(e) is "time spent in responding to discovery" under Fed. R.Civ.P. 26(b)(4)(C), and, if so, whether it is an expense that should be borne by the party seeking discovery from the expert witness. The Court has found no published decisions instructive on this narrowly defined issue. However, reported decisions that address whether a party seeking to depose an expert witness must pay for the time spent by the expert preparing for the deposition offer some guidance. *EEOC v. Sears, Roebuck and Co.*, 138 F.R.D. 523 (N.D.Ill.1991) and *Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45 (N.D.Ill.1989).

[¶ 30] In *Witco*, the defendant agreed to pay the plaintiff's expert witness for time spent taking the deposition, but refused to pay for time the expert spent preparing for the deposition. 126 F.R.D. at 46–47. The district court held that the defendant was not required to pay for the preparation time of the opposing party's expert witness, reasoning that "time spent 'preparing' for a deposition entails not only the expert's review of his conclusions and their basis, but also consultation between the responding party's counsel and the expert to prepare the expert to best support the responding party's case and to anticipate questions from the seeking party's counsel. An expert's deposition is in part a dress rehearsal for his testimony at trial and

thus his preparation is part of trial preparation. One party need not pay for the other's trial preparation." *Id.* at 47–48 (interpreting pre-amendment Rules of Civil Procedure, the court further explained that the exclusion of preparation time for depositions is supported by lack of a provision compensating expert witnesses for time spent responding to interrogatories under Fed.R.Civ.P. 26(b)(4)(A)(i)).

[¶ 31] Yet, the *Witco* court also carved out an exception to this rule, and explained that compensation for preparation time would be appropriate in certain cases, "such as in a complex case where the expert's deposition has been repeatedly postponed over long periods of time by the seeking party causing the expert to repeatedly review voluminous documents." *Id.* at 47. This exception was applied in *Sears,* a case that did involve complex litigation requiring the defendant to retain numerous expert witnesses to review voluminous documents. The court held that the range of expert activities for which the defendant could be reimbursed was very narrow, and included costs associated with the review of documents and similar undertakings, but not the costs of computer runs. 138 F.R.D. at 526. Similarly, in *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.,* the court adhered to the rulings in *Witco* and *Sears* in applying the amended Fed.R.Civ.P. 26(b)(4)(C), and held that the plaintiff should compensate the defendant for five hours of its expert's deposition preparation time because the damage issues in the litigation were complex and because the deposition was to occur four to five months after the expert witness prepared a lengthy single spaced report. 154 F.R.D. 212, 214 (E.D.Wis.1994).

[¶ 32] There has been some disagreement with the *Witco* decision that preparation time for a deposition cannot be charged to the party seeking the deposition unless the litigation is particularly complex. *Hose v. Chicago and North Western Transp. Co.,* 154 F.R.D. 222 (S.D.Iowa 1994). In *Hose,* the court held that the defendant was required to pay for a neurologist's time spent reviewing medical records in preparation for his deposition. The court questioned the underlying rationale in *Witco* that compensating deposi-

tion preparation time was too much like compensating the opposing party's trial preparation time because the expert witness would most likely consult with opposing counsel in preparing for responses to anticipated deposition questions. 154 F.R.D. at 228. The court explained that the neurologist in such case was not seeking compensation for time spent consulting with the plaintiff's counsel, but rather only for time spent reviewing relevant medical records as the plaintiff's treating neurologist, not as an expert hired specifically for the litigation. *Id.* The court offered a persuasive justification for its holding by explaining how preparation time can save time in the actual deposition:

> [C]ompensating [the doctor] for his time spent reviewing Plaintiff's medical records speeds the deposition process along, thereby saving on costs. The more costly alternative would be for [the doctor] to refresh his memory during the deposition with the medical records. Under that scenario, not only would [the defendant] be required to pay [the doctor], but would be required to absorb the additional costs of their [sic] counsel while [the doctor] refreshed his memory.

*Id.*

[¶ 33] These holdings suggest that, except when the case involves complex litigation, the courts are divided over whether or not a party must pay deposition preparation costs for the opposing party's expert witnesses. *Hose* focuses on the potential benefit to the opposing party of the preparation time, particularly if the actual deposition time is shortened as a result. The issue in the instant case does not relate to time spent *before* the deposition is taken, but rather time spent reading, reviewing, and making changes to the transcript *after* the deposition. The City argues that because the deponent is not obligated to review the deposition transcript, but rather has the right to request such review under Fed.R.Civ.P. 30(e), the City should not be required to compensate the expert witnesses for those costs. The letter from plaintiff's expert witnesses to counsel for the City, dated March 12, 1998, after consultation with plaintiff's attorney, suggests that because (1) counsel requested

Mr. Butler to review Mr. Loken's deposition testimony; (2) it was the right of each expert to review the deposition transcripts; and (3) the reviews of both experts were a service that was of value to the City, the City is responsible for the expenses at issue.

■■■ [¶ 34] With regard to Butler, the Court is persuaded by the rationale in *Hose* that the City should pay for the time he spent reviewing the deposition testimony of Loken. Counsel for the City clearly indicated to Butler that his review of Loken's deposition testimony would "speed things up" and save time during Butler's deposition. Moreover, Fed.R.Civ.P. 30(e) provides that "the deponent *or a party* may request the deponent to review the deposition transcript." Therefore, because it is not exclusively the deponent's right, and because of counsel's explicit request during the deposition, the City is ordered to pay for Butler's time reviewing Loken's deposition transcript.

■■■ [¶ 35] The time spent by Loken and Butler reviewing their own deposition testimony under Fed.R.Civ.P. 30(e) is another question. The Court notes the reluctance inherent in the decisions of other district courts to order the party seeking the deposition to pay the expenses for preparation time of the opposing party's expert witness unless the case involves complex litigation. *S.A. Healy Co.*, 154 F.R.D. at 214; *Witco*, 126 F.R.D. at 47–48. The Court does not find that the instant case entails the degree of complexity envisioned by the court in *Witco* and subsequent decisions applying the rule set forth in that case. Moreover, if the party seeking the deposition were always required to pay for the time spent by the deponent reviewing and making changes to the deposition transcript, expert witnesses would be encouraged to request the right to review the transcript in every deposition, regardless of the necessity of such an action. Such a requirement could threaten to result in manifest injustice under Fed.R.Civ.P. 26(b)(4)(C). If such costs were borne by the expert witness or by the party who retained him or her, the decision to request the review would be made with greater consideration rather than simply as an act to force the party seeking the deposition to pay additional ex-

penses. However, if the deposition transcript indicates that the deposing party strongly encouraged the deponent to review the transcript so as to reduce that party's costs or to benefit its case in some way, then the relevant costs should be paid by the party seeking the deposition. It does not appear that the City's counsel encouraged Loken to review his own deposition testimony, but rather objectively advised the expert witness, in the absence of plaintiff's counsel (who apparently chose not to attend the deposition or obtain another attorney to do so), of his right to read and review the deposition transcript for accuracy and to make changes if necessary. The Court assumes, in the absence of relevant pages of the deposition testimony, that similar advice was given to Butler. Therefore, the City is not responsible to pay for the experts' fees associated with the review of their own deposition testimony.

## IV. Motion for Protective Order

[¶ 36] The City filed a motion for a protective order declaring that it need not answer the Request for Admissions served by plaintiff after the deadline for discovery had expired, Doc. 48. Plaintiff filed a stipulation withdrawing the request for admissions, Doc. 55. The City's motion for protective order is therefore denied as moot.

## ORDER

[¶ 37] IT IS ORDERED that:

(1) Plaintiff's motion for summary judgment, Doc. 45, is denied;

(2) Defendant's motion for summary judgment, Doc. 38, is granted in part and denied in part as to Counts IV and VIII, and granted as to Counts I, II, III, V, VI, and VII of the complaint;

(3) Plaintiff's motion for order compelling production of documents, Doc. 37, is granted;

(4) Defendant's motion to determine its responsibility for expert fees, Doc. 43, is granted in part and denied in part; and

(5) Defendant's motion for protective order, Doc. 48, is denied as moot.