**ROCK RIVER COMMUNICATIONS, INC.**

v.

**UNIVERSAL MUSIC GROUP.**

**No. CV 08–0635 CAS (AJWx).**

United States District Court, C.D. California, Western Division.

Aug. 31, 2011.

---

*See also* 807 F.Supp.2d 917, 2011 WL 3501762

Courtney A. Palko, Maxwell M. Blecher, Blecher and Collins PC, Los Angeles, CA, for Plaintiff.

David Carter Dinielli, Eric P. Turtle, Glenn D. Pomerantz, Joshua P. Groban, Kelly M. Klaus, Benjamin J. Maro, Hairyn J. Chen, Munger Tolles & Olson LLP, Los Angeles, CA, for Defendants.

## ORDER REGARDING PLAINTIFF'S MOTION TO RECOVER EXPERT DEPOSITION COSTS

ANDREW J. WISTRICH, United States Magistrate Judge.

Defendant already has compensated plaintiff for the time plaintiff's experts spent testifying during their depositions. By this motion, plaintiff seeks to recover from defendant additional expert fees incurred for the following deposition-related activities: (1) time an expert spent preparing for the expert's deposition; (2) time an expert spent reviewing and correcting the transcript of the expert's deposition; and (3) time an expert spent traveling to and from the expert's deposition. At issue is time devoted to these types of activities by the following experts retained by plaintiff: Karl Schulze, Art Jaeger, Tag Gross, Jeff Rougvie, and Mark Spicer.

The relevant rule provides: "Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)...." Fed.R.Civ.P. 26(b)(4)(E)(i). The relevant Advisory Committee Note adds: "Concerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for

the deposition will ordinarily be borne by the party taking the deposition." Advisory Committee Note to 1993 Amendments to Fed. R.Civ.P. 26. The Advisory Committee Note also says: "The requirement . . . of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions." Advisory Committee Note to 1993 Amendment to Fed.R.Civ.P. 26.

The Advisory Committee Note's use of the phrase "for the deposition" suggests that the shifting of expert fees is limited to the fees attributable to the deposition itself. Such an interpretation would require denial of this motion in its entirety. Because the language of the Advisory Committee Note arguably could be construed differently, however, more thorough analysis is warranted.

### 1. Transcript Review and Correction

█ Plaintiff has cited no authority for the proposition that the deposing party must pay for time an expert spent reviewing or correcting his or her deposition transcript. Courts that have considered this issue usually have rejected any such notion. *See, e.g., Patterson Farm, Inc. v. City of Britton,* 22 F.Supp.2d 1085, 1096 (D.S.D.1998); *but see Underhill Investment Corp. v. Fixed Income Discount Advisory Co.,* 540 F.Supp.2d 528, 539 (D.Del.2008). As the court in *Patterson Farm, Inc.,* explained:

> "[I]f the party seeking the deposition were always required to pay for the time spent by the deponent reviewing and making changes to the deposition transcript, expert witnesses would be encouraged to review the transcript in every deposition regardless of the necessity of such an action. . . . If such costs were borne by the expert witness or by the party who retained him or her, the decision to request the review would be made with greater consideration rather than simply as an act to force the party seeking the deposition to pay additional expenses."

*Patterson Farm, Inc.,* 22 F.Supp.2d at 1096. This is wise. Although a deponent has the right to review and correct the transcript of his or her deposition testimony, *see* Fed. R.Civ.P. 30(e)(1), he or she is not obliged to do so, even if the deposing party requests it. *See generally* Advisory Committee Note to 1993 Amendment to Fed.R.Civ.P. 30 ("If review is requested, the deponent will be allowed 30 days to review the transcript and to indicate any changes in form or substance.").

One court has suggested that "if the deposition transcription indicates that the deposing party strongly encouraged the deponent to review the transcript so as to reduce that party's costs or to benefit its case in some way, then the relevant costs should be paid by the party seeking the deposition." *Patterson Farm, Inc.,* 22 F.Supp.2d at 1096. There is, of course, no need for such a rule. Since a deponent (including an expert) cannot be forced to review the transcript of his or her deposition for the benefit of the deposing party, he or she can simply decline to do so unless the deposing party agrees to pay for the time required to conduct such a review. In addition, since it is difficult to imagine how the deposing party would benefit from the undertaking, such requests are likely to be infrequent.

### 2. Preparation

█ Several courts have concluded that the deposing party should pay for the time an expert spent preparing for his or her deposition, *see, e.g., Schmidt v. Solis,* 272 F.R.D. 1, 3 (D.D.C.2010); *Borel v. Chevron U.S.A. Inc.,* 265 F.R.D. 275, 277 (E.D.La. 2010) (recognizing that federal courts "are split" on whether expert fees attributable to deposition preparation time can be shifted to the deposing party, concluding that "a slim majority" permits it, and collecting cases). Other courts have reached the opposite conclusion. *See, e.g., 3M Co. v. Kanbar,* 2007 WL 2972921, *3 (N.D.Cal.2007) (noting "persuasive authority which states that ordinarily the deposing party need only pay for time spent in deposition" absent extenuating circumstances). The latter view is more sound. Although it is true that most lawyers are likely to insist that their experts spend some time preparing for a deposition, *see Schmidt,*

272 F.R.D. at 3 [1], and that a well-prepared expert's deposition may proceed more efficiently, see Hose v. Chicago & N.W. Transp. Co., 154 F.R.D. 222, 228 (S.D.Iowa 1994) (suggesting that the deposing party would ultimately absorb the cost of the expert's preparation by having to wait while the expert refreshed his memory during the deposition), there are countervailing concerns.

One concern is that the deposing party has no control over how much time an expert spends preparing for a deposition. The amount of time an expert devotes to deposition preparation depends on the philosophy of the expert and retaining counsel. Some lawyers might ask an expert to briefly reread his or her report, while others might demand that he or she devote several days to deposition preparation. The latter might insist that the expert review not only his report, but also all of the underlying facts and data, study the report and deposition testimony of his or her counterpart expert, participate in extensive mock direct and cross-examination, and so on. Shifting expert fees for deposition preparation creates what economists call an externality: the retaining party determines how much deposition preparation it deems desirable, but the deposing party pays for it. When benefit and cost are separated like this, the risk of unfairness is great. Some courts have tried to ameliorate this difficulty by limiting the amount of shiftable preparation time to the duration of the deposition. While this mitigates the risk of unfairness, it also is completely arbitrary. Moreover, since the deposing party cannot predict how much time the expert will spend preparing for the deposition, there is no way to take the cost of such preparation into account in deciding whether to take the deposition. Cf. Louis Kaplow & Steven Shavell, Accuracy In the Assessment of Damages, 39 J.L. & Econ. 191, 192 (1996) ("[A]ccuracy in the assessment of harm cannot influence the behavior of injurers—and is of no social value—to the degree that they lack knowledge of the level of harm they might cause when they make their decisions.").

A second concern is that an expert's deposition preparation may encompass a variety of tasks that contribute little or nothing to the efficiency of the deposition, are largely unrelated to the deposition, or are undertaken for an entirely partisan purpose (such as educating an expert about the retaining party's strategy, instructing the expert about how to behave during the deposition, employing mock cross-examination to prepare the expert to testify persuasively during the deposition, preparing the expert for testimony at trial, etc.). Since expert depositions typically are taken toward the end of the case schedule, and frequently shortly before trial, deposition preparation and trial preparation often inevitably overlap. See, e.g., Patterson Farm, Inc., 22 F.Supp.2d at 1094–1095 ("[T]ime spent 'preparing' for a deposition entails not only the expert's review of his conclusions and their basis, but also communication between the responding party's counsel and the expert to prepare the expert to best support the responding party's case and to anticipate questions from seeking party's counsel. An expert's deposition is in part a dress rehearsal for his testimony at trial and his preparation is part of trial preparation. One party need not pay for the other's trial preparation.").

■ This case illustrates some of these problems. For example, Schulze testified for 2:48 hours, but prepared for 7:05 hours, and spent another hour correcting his transcript. Accordingly, he spent nearly three times as long preparing for the deposition and correcting his transcript as he did testifying. Similarly, Spicer spent more than four times as long preparing for the deposition and correcting his transcript as he did testifying. Perhaps those proportions are reasonable in the circumstances, or perhaps they are not, but one can understand how a deposing party might be skeptical of them and feel justified in declining to pay for them. Reasonable lawyers might disagree about how much preparation is warranted in a particular instance. It makes little sense, however, to require adversaries to scrutinize each other's

---

1. See Jack G. Stern, Kimo S. Reluso & Laura B. Stamm, Expert Depositions 824 PLI/Lit 155, *171–179 (June 9, 2010); Maureen K. Molloy, Preparing an Expert for Deposition: Practice Pointers From the Expert's Point of View, 24–Sep Vt. B.J. & L. Dig. 49 (1998).

respective levels of preparation of their experts or to force the court to second-guess the choices of counsel about how much preparation is warranted. Accordingly, it seems best to leave the retaining party free to have its expert prepare as thoroughly, and review his or her deposition transcript as meticulously, as it wishes, albeit at its own expense. Although I do not disagree that the vast majority of lawyers would choose to have an expert prepare for his or her deposition, nothing requires it. More importantly, the amount of such preparation may vary widely and unpredictably.

3. Travel

 Time an expert spent traveling to and from the deposition generally is regarded as an expense that should be shifted to the deposing party. *See, e.g., Frederick v. Columbia University,* 212 F.R.D. 176, 177–178 (S.D.N.Y.2003); *Haarhuis v. Kunnan Enterprises, Ltd.,* 223 B.R. 252, 258 (D.D.C. 1998) *aff'd,* 177 F.3d 1007 (D.C.Cir.1999); *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 646 (E.D.N.Y.1997). That makes sense. Unless the deposition is taken at an expert's home or office, the expert cannot avoid spending some time traveling to and from the deposition. The deposing party can control the amount of time the expert spends traveling by selecting a location for an expert's deposition that minimizes an expert's travel time, potentially including opting to take the deposition by telephone or video conference. Moreover, the deposing party can make intelligent decisions about such matters because travel time generally can be estimated with reasonable accuracy in advance. Requiring the deposing party to pay for the expert's travel time encourages the deposing party to correctly weigh the overall cost and inconvenience of the deposition (including the expense of travel by the expert and both parties' counsel), and to best determine whether, and if so, where, to take the deposition.

Plaintiff's proposal to bill its expert's travel time at one-half of their normal rate is unexceptionable, although it could be argued that an expert should be entitled to charge his full rate if the travel caused him to be unavailable to perform work at his full rate for a different client during the time he or she spent traveling to the deposition.

Based on the foregoing analysis, plaintiff is awarded the following:

| | |
|---|---|
| Karl Schulze | $ 0 |
| Art Jaeger | $ 400 |
| Tag Goss | $ 125 |
| Jeff Rougvie | $ 0 |
| Mark Spicer | $ 400 |
| **Total** | **$ 925.00** |

Defendant shall pay $925.00 to plaintiff within 14 days.

**IT IS SO ORDERED.**