IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-40835

---

FRIENDS OF THE EARTH, INC.,

Plaintiff-Appellant,

versus

CROWN CENTRAL PETROLEUM
CORPORATION,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

September 3, 1996

Before HIGGINBOTHAM, WIENER, and PARKER, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case presents the question whether an organization whose membership includes individuals who birdwatch and fish at a lake some 18 miles and three tributaries from the source of unlawful water pollution meet the fairly traceable component of the standing doctrine to sue for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. We answer the question in the negative and affirm.

I.

Crown Central Petroleum Corporation, d/b/a La Gloria Oil & Gas Co., operates an oil refinery in Tyler, Texas. Pursuant to a National Pollutant Discharge Elimination System permit issued by

the Environmental Protection Agency, La Gloria discharges storm-water run-off into Black Fork Creek.  That creek flows into Prairie Creek, which joins the Neches River, which in turn flows into Lake Palestine.  Lake Palestine is 18 miles "downstream" from La Gloria's refinery.

On April 18, 1994, Friends of the Earth, Inc., a not-for-profit corporation dedicated to the protection of the environment, sent a notice letter to La Gloria alleging that La Gloria was violating Sections 301(a), 308(a), and 402 of the Federal Water Pollution Control Act.  See 33 U.S.C. §§ 1311(a), 1318(a), 1342. Two months later, FOE filed a citizen suit against La Gloria pursuant to Section 505 of the Act.  See 33 U.S.C. § 1365(b).  FOE charged La Gloria with 344 violations of the discharge limitations and monitoring requirements of its NPDES permit.  FOE sought declaratory and injunctive relief, along with civil penalties and attorneys' fees.

FOE brought the suit on behalf of itself and its members. According to FOE's complaint, "[m]embers of FOE reside in the vicinity of, or own property or recreate in, on or near the waters of Black Fork Creek, Prairie Creek, Palestine Lake, the Neches River, the Neches River Basin and tidally related waters affected by" La Gloria's discharges.  FOE asserted that La Gloria's allegedly unlawful conduct "directly affects the health, economic, recreational, aesthetic and environmental interests of FOE's members."  To substantiate these allegations, FOE provided the affidavits of three FOE members--Nathan Greene, Larry Pilgrim, and

Judith Pilgrim--all of whom had joined FOE either immediately before or soon after FOE filed its complaint.

La Gloria moved for summary judgment, arguing that FOE lacked standing to bring the suit and that FOE's notice was insufficient because none of the three affiants were FOE members at the time the notice letter was sent to La Gloria. In response, FOE refiled its complaint, which was consolidated with the first suit.

La Gloria moved to dismiss the second complaint on the grounds that it was duplicative of the first. FOE filed a third complaint on May 4, 1995, alleging additional NPDES permit violations. The district court consolidated the third complaint with this suit.

The district court granted La Gloria's motion for summary judgment, holding that FOE lacked standing to pursue the suit. The court found that only one of the three affiants was a FOE member at the time the first complaint was filed. The court held that this member had suffered no injury-in-fact and that, even if he had, he could not trace that injury to La Gloria's alleged NPDES permit violations. The district court further held that FOE itself lacked standing to sue La Gloria regarding its NPDES permit monitoring violations since FOE had failed to demonstrate that it, as an organization, had suffered an injury-in-fact. After dismissing FOE's second complaint as duplicative of the first, the court stayed consideration of La Gloria's motion for attorneys' fees and costs pending this appeal. We have jurisdiction. 28 U.S.C. § 1291.

II.

FOE claims it has standing to pursue this litigation both on its own behalf and as an representational association with members who have standing to assert these claims against La Gloria. We address the latter claim first.

A.

An association has standing to bring a suit on behalf of its members when: 1) its members would otherwise have standing to sue in their own right; 2) the interest it seeks to protect are germane to the organization's purpose; and, 3) neither the claim asserted nor the relief requested requires the participation of individual members. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); see also United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 116 S.Ct. 1529, 1534 (1996). There is no dispute regarding the latter two elements; rather, this appeal focuses on the first: whether FOE's members have standing to sue in their own right.

To demonstrate that FOE's members have standing, FOE must show that: 1) its members have suffered an actual or threatened injury; 2) the injury is "fairly traceable" to the defendant's actions; and 3) the injury will likely be redressed if it prevails in the lawsuit. Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992); Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546, 556 (5th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3780 (May 10, 1996) (No. 95-1831). The district court found for La Gloria on the first two elements. We do not address

4

the first element because we conclude that plaintiffs fail on the requirement that injury be "fairly traceable" to La Gloria's discharges.

In Cedar Point, we affirmed summary judgment for an environmental group that had brought suit on behalf of its members against an oil company that was unlawfully discharging "produced water" into Galveston Bay. The oil company challenged the group's standing to bring the suit, claiming among other things that the injury suffered by the group's members was not "fairly traceable" to the oil company's discharges of produced water. Rejecting that contention, we applied the three-part test from Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 72 (3d Cir. 1990), cert. denied, 498 U.S. 1109 (1991), to determine whether an injury is "fairly traceable" to a defendant's discharges in a citizen suit under the Clean Water Act: the plaintiff must demonstrate that "'a defendant has (1) discharged some pollutant in concentrations greater than allowed by its permit (2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs.'" Id. at 557 (quoting Powell Duffryn, 913 F.2d at 72).

We upheld the environmental group's standing on the basis of affidavits filed by three of its members who used Galveston Bay. Focusing on the second prong of the Powell Duffryn test, we noted that all three affiants use Galveston Bay and that one of them

5

"canoed and participated in educational trips in the vicinity of [the oil company's] discharge, and . . . intends to continue these activities in this area in the future." Id. at 558. That affiant's use of the specific area of the Bay in which unlawful discharges occurred played an important role in our decision to affirm the judgment. We cautioned against a broad reading of our opinion:

> We note, however, that Douglas was the only affiant who expressed an interest in that part of Galveston Bay where Cedar Point's discharge is located. It is true that a strict application of the Powell Duffryn test does not demand that sort of specificity, because the plaintiff need only show an interest in the 'waterway' into which the defendant is discharging a pollutant; nevertheless, such a literal reading of Powell Duffryn may produce results incongruous with our usual understanding of the Article III standing requirements. For example, some 'waterways' covered by the CWA may be so large that plaintiffs should rightfully demonstrate a more specific geographic or other causative nexus in order to satisfy the "fairly traceable" element of standing. Therefore, while we find the Powell Duffryn test useful for analyzing whether Douglas's affidavit meets the 'fairly traceable' requirement, we recognize that it may not be an appropriate standard in other CWA cases.

Id. at 558 n.24 (emphasis in original).

We are persuaded that this case presents a situation in which Powell Duffryn's focus on the plaintiff's interest in the "waterway" into which unlawful pollution flows passes Article III bounds. La Gloria discharges into Black Fork Creek. None of FOE's members use that creek; nor do they use Prairie Creek; nor do they use the Neches River. Rather, FOE's members use Lake Palestine. In contrast to Sierra Club's members who used the affected part of Galveston Bay, FOE's members use a body of water located three

6

tributaries and 18 miles "downstream" from La Gloria's refinery. Assuming without deciding that Lake Palestine is part of the same "waterway" as Black Fork Creek for purposes of the Powell Duffryn test, that "waterway" is too large to infer causation solely from the use of some portion of it. Cf. Friends of the Earth, Inc. v. Chevron Chemical Co., 900 F.Supp. 67, 75 (E.D. Tex. 1995) (holding that two- to four-mile distance between source of pollution and waterway used by plaintiffs was not too great to infer causation).

No genuine issue of material fact exists regarding whether FOE's members have suffered an injury that is "fairly traceable" to La Gloria's discharges. We emphasize that FOE offered no competent evidence that La Gloria's discharges have made their way to Lake Palestine or would otherwise affect Lake Palestine. Cf. Watkins, 954 F.2d at 981. Rather, FOE points to the deposition testimony of several of its members. When asked whether they knew that La Gloria's discharges ended up in Lake Palestine, the members replied they did not know but assumed it to be the case because "that's the way water runs." In short, FOE and its members relied solely on the truism that water flows downstream and inferred therefrom that any injury suffered downstream is "fairly traceable" to unlawful discharges upstream. At some point this common sense observation becomes little more than surmise. At that point certainly the requirements of Article III are not met.

FOE points to the absence of any evidence in the record that the pollutants in La Gloria's discharges evaporate, are diluted to

7

neutrality, or sink to the bottom before reaching Lake Palestine. FOE has this backwards. Standing is an issue upon which the party invoking federal jurisdiction, the plaintiff, bears the burden of persuasion. Defenders of Wildlife, 112 S.Ct. at 2136. FOE does not meet its burden by pointing to the absence of evidence showing that it lacks standing. Because FOE did not offer competent summary judgment evidence that its members' injuries are "fairly traceable" to La Gloria's discharges into Black Fork Creek, it does not have standing as a representational organization to sue La Gloria for its discharge and reporting violations.

We emphasize the narrow scope of our holding. We do not impose a mileage or tributary limit for plaintiffs proceeding under the citizen suit provision of the CWA. To the contrary, plaintiffs who use "waterways" far downstream from the source of unlawful pollution may satisfy the "fairly traceable" element by relying on alternative types of evidence. See Cedar Point, 73 F.3d at 558 n.24. For example, plaintiffs may produce water samples showing the presence of a pollutant of the type discharged by the defendant upstream or rely on expert testimony suggesting that pollution upstream contributes to a perceivable effect in the water that the plaintiffs use. At some point, however, we can no longer assume that an injury is fairly traceable to a defendant's conduct solely on the basis of the observation that water runs downstream. Under such circumstances, a plaintiff must produce some proof; here, that proof was lacking.

B.

8

Because FOE's members do not have standing to sue for La Gloria's discharge violations, they do not have standing to sue for the reporting violations.  <u>Simkins Industries</u> establishes that an individual's standing to sue for reporting violation depends upon his standing to sue for discharge violations.  <u>See</u> 847 F.2d at 1113 (noting that to establish standing to sue for reporting violation, "Sierra Club must establish that one or more of its members use the Patapsco River and would be adversely affected by its pollution").  Stated negatively, an individual without standing to sue for discharge violations, <u>a fortiori</u>, lacks standing to sue for reporting violations.

FOE also lacks standing on its own behalf to sue La Gloria for reporting violations.  <u>Foundation on Economic Trends v. Lyng</u>, 943 F.2d 79, 84 (D.C. Cir. 1991).  FOE cites cases dealing with statutory standing; none of these cases conflict with <u>Lyng</u>, which involved Article III standing.  We find the reasoning of <u>Lyng</u> persuasive, and its holding disposes of this portion of FOE's appeal.

Finally, we find no error in the district court's order dismissing FOE's second complaint as duplicative of the first.  <u>Oliney v. Gardner</u>, 771 F.2d 856 (5th Cir. 1985).  "When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed."  <u>Id.</u> at 859.  This rule finds particular application where, as here, the plaintiff files the second complaint to achieve

procedural advantage by "circumventing the rules pertaining to the amendment of complaints."  <u>Id.</u>

## III.

We conclude that FOE lacks standing under Article III to sue La Gloria for discharge and reporting violations under the CWA.  We AFFIRM the judgment of the district court.