**INFORMED CITIZENS UNITED, INC.**

v.

**USX CORPORATION.**

No. CIV.A. G–98–190.

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 9, 1999.

James B. Blackburn, Jr., Mary W. Carter, Blackburn & Carter, Houston, TX, for Informed Citizens United, Inc., plaintiff.

James Frederick Allen, Squire Sanders and Dempsey, Houston, TX, for USX Corporation, defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

In this action, Plaintiff Informed Citizens United, Inc., ("ICU") brings a citizen suit under the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, against Defendant USX Corporation ("USX"). ICU alleges that USX violated the terms of a permit issued by the U.S. Army Corps of Engineers which authorized USX to discharge dredged or fill material onto certain wetlands owned by USX. Now before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Response and Cross–Motion for Summary Judgment. For the reasons stated below, Defendant's Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

### I. FACTS

USX is the owner of approximately 13,000 acres of property in Chambers County, Texas, on which a steel mill facility and the Cedar Crossing Industrial Park are located. Woods and pasture cover most of the property. In order to facilitate development of a portion of the property (approximately 800 acres), USX applied to the U.S. Army Corps of Engineers (the "Corps") on May 14, 1996, for authorization to fill 9.7 acres of land thought to be wetlands. To mitigate the loss of wetlands, USX proposed to construct approximately 10 additional acres of new or enhanced wetlands in the same area, as well as a buffer area designed to control the encroachment of Chinese tallow trees. The mitigation plan proposed by USX stated that the wetlands would only be filled "when demand [was] sufficient to require expansion of the project into these areas. If the project fails or does not expand into these wetlands, they will not have been impacted and will continue to function in their present manner[.]" On June 27, 1996, the Corps approved USX's request and mitigation plan and issued authorization to proceed under Nationwide Permit No. 26 ("NWP 26").

The filling activity and the construction and enhancement of the wetlands were completed before June 27, 1997, the date on which USX's authorization to conduct fill activity under NWP 26 expired. At the time of the filling, no development existed (nor today exists) on the land at issue. ICU filed this lawsuit under the Clean Water Act alleging that USX violated its permit by filling the 9.7 acres and constructing the mitigation acres before development of the property so required, thereby contradicting the terms of

the approved mitigation plan regarding timing of the fill activity.

## II. STANDARD OF ANALYSIS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.;see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

### A. Jurisdiction

■ As a preliminary matter, the Court will dispense with USX's argument that the Court does not have jurisdiction over this case under the Clean Water Act. The relevant portion of the Act states:

> [A]ny citizen may commence a civil action on his own behalf—(1) against any person ...who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a). USX argues that the language "in violation of" requires there to be a continuing or intermittent violation by a polluter in order for this Court to have jurisdiction. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987)

("The most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future."); *see also Chesapeake Bay Found., Inc., v. Gwaltney of Smithfield, Ltd.,* 890 F.2d 690, 693 (4th Cir.1989). On the facts of this case, USX argues that a "continuing violation" can only mean the ongoing dumping of fill material onto wetlands; it would therefore follow that the violation at issue in this case is "wholly past" because USX has completed its dumping of fill material. Consequently, USX argues that this Court lacks jurisdiction over ICU's Complaint.

USX's reliance on *Gwaltney* for its construction of 33 U.S.C. § 1365(a) is misplaced because *Gwaltney* involved a wastewater violation and thus a much different situation than in the instant action. Several courts in cases involving filled wetlands have found *Gwaltney* inapplicable and held that a violation is "continuing" for purposes of the statute until illegally dumped fill material has been removed. *See Sasser v. EPA,* 990 F.2d 127, 129 (4th Cir.1993)("Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation."); *United States v. Reaves,* 923 F.Supp. 1530, 1534 (M.D.Fla.1996); *North Carolina Wildlife Fed'n v.Woodbury,* 1989 WL 106517, No. 87–584–CIV–5 (E.D.N.C. April 25, 1989); *United States v. Tull,* 615 F.Supp. 610, (E.D.Va.1983), *aff'd* 769 F.2d 182 (4th Cir. 1985), *rev'd on other grounds,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). USX cites only two wetlands cases in support of its position. The first case, *Prisco v. New York,* 902 F.Supp. 374 (S.D.N.Y.1995), is inapposite as the plaintiff had already removed the illegally dumped fill material when suit was commenced. The second case, *Bettis v. Town of Ontario,* 800 F.Supp. 1113 (W.D.N.Y.1992), while factually on point and directly supportive of USX's argument, appears to be an aberration in light of the weight of authority discussed above. Furthermore, sound public policy supports this Court's jurisdiction over the alleged Clean Water Act violation. As the court in *North Carolina Wildlife Fed'n v. Woodbury,* 1989

WL 106517, No. 87–584–CIV–5, *3 (E.D.N.C. April 25, 1989), stated: "[i]f citizens suits were barred merely because any illegal ditching and drainage of a wetland tract was completed before it might reasonably be discovered, violators would have a powerful incentive to conceal their activities from public and private scrutiny—which would lead to serious problems in public and private enforcement of the Clean Water Act."

## B. Standing

▆▆ Defendant also argues and the Court agrees that ICU, a non-profit corporation incorporated under the laws of the State of Texas, does not have standing to litigate its claim. A plaintiff has standing as an organization or association only if: (1) the interest is germane to the purpose of the plaintiff organization, (2) any of the plaintiff organization's members have standing to sue on their own behalf, and (3) the participation of individual members in the lawsuit is not required. *See Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 360 (5th Cir.1996); *Save Ourselves v. U.S. Army Corps of Engineers*, 958 F.2d 659, 661 (5th Cir.1992). To demonstrate that an individual member has standing in accordance with the second prong of the test, that member must demonstrate that he has suffered an injury in fact—an invasion of a legally protected interest which is concrete and particularized, actual or imminent, not conjectural or hypothetical. *See Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 360 (5th Cir.1996). He must also show a causal connection between the defendant's conduct and the alleged injury, and the injury must be redressible by a favorable decision of the court. *See id.* The crux of USX's argument is that none of the members of ICU have suffered an injury in fact.

▆▆ The only member on whom ICU relies to fulfill the standing requirement, Mr. Ted Hollingsworth, is a bird-watcher by avocation. He owns property, located more than a mile away from the filled wetlands, next to which runs an unnamed tidal creek. He claims that his opportunities for bird-watching and observation of other wildlife have been and will be further diminished by changes in the creek and its vegetation resulting from USX's filling activity. The only evidence submitted by ICU to substantiate Mr. Hollingsworth's claims, aside from his own allegations, consists of affidavits from two experts stating that the pattern of drainage into the creek has and will continue to be altered by the filling of the wetlands at issue. The affidavits make vague conclusions about the negative impact on wildlife expected as a result of the changed drainage patterns. Those affidavits and Mr. Hollingsworth's allegations fall far short of rising to the level of proof necessary to demonstrate a cognizable, redressible injury that can confer standing. Additionally, the Court agrees with Defendant that Mr. Hollingsworth's complaints are not of the sort which the Clean Water Act, passed in response to concerns about burgeoning pollution in the nation's navigable waterways, was designed to address. Consequently, the Court finds that ICU does not have standing to litigate its claims, and thus Defendant's Motion for Summary Judgment on this ground is **GRANTED**. Nevertheless, the Court acknowledges that the doctrine of standing, especially as it has been developed in environmental cases, can be as murky as some of the polluted waterways targeted by the Clean Water Act. Accordingly, the Court will also rest its ruling on the firmer ground discussed below.

## C. Approval of USX's Activities by the Corps

▆▆ The fundamental purpose of the Clean Water Act is to prohibit the discharge of pollutants without a permit. *See* 33 U.S.C. §§ 1311, 1344. In the case of wetlands, the Act prohibits discharge of fill material except pursuant to a permit issued by the U.S. Army Corps of Engineers. *Id.* The Corps is therefore responsible for issuing and enforcing permits. As the United States Supreme Court has stated: "considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (quoting *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978)).

The Supreme Court went on to state that "an agency's construction of its own regulations is entitled to even greater deference." *Id.* And specifically with respect to the Clean Water Act, the United States Court of Appeals for the Fifth Circuit has noted that "Congress has delegated substantial authority to the EPA administrator, and with respect to the dredge-and-fill permits, to the Corps, for the implementation of the [Clean Water Act]." *Avoyelles Sportsmen's League, Inc., v. Marsh,* 715 F.2d 897, 911 (5th Cir. 1983).

Here USX applied for and received a valid permit to fill the 9.7 acres of wetlands at issue. The Army Corps of Engineers unequivocally stated that USX's actions in filling the wetlands were conducted in accordance with the conditions of its permit. ICU complains of the timing of USX's actions, but the Project Engineer responsible for reviewing USX's application and mitigation plan stated that he "did not consider the timing of filling...to be pertinent to our decision referencing this Nationwide Permit, nor did I consider the condition necessary to ensure that the proposed fill activity would not have more than minimal adverse effect on the environment or otherwise be contrary to the public interest." Furthermore, the Project Engineer and Regulatory Enforcement personnel inspected the filled areas and the mitigation areas on February 3, 1998. In consultation with the Chief of the Regulatory Branch, they concluded that the filling and construction of enhanced and expanded wetlands was performed in accordance with NWP 26.

For its part, ICU's Response makes no mention of the Corps' approval of USX's activities. ICU offers no precedent as a basis for rejecting the Corps' evaluation and substituting its judgment—that of a private party—for the Corps'. In fact, ICU cites only one case involving an alleged Clean Water Act violation where a defendant had been granted a permit and was found in violation of that permit. *See United States v. King Fisher Marine Serv.,* 640 F.2d 522 (5th Cir.1981) (per curiam). In that case, the Corps of Engineers contended that the defendant had violated a permit the Corps had issued. In this case, the Corps has affirmatively stated that USX did not violate its permit. ICU has offered no evidence to dissuade the Court from treating the Corps' evaluation with the traditional deference accorded a regulatory agency charged with the enforcement of its own regulations. Accordingly, the Court finds as a matter of law that USX did not violate its permit and thus USX's Motion for Summary Judgment is **GRANTED** and ICU's Motion is **DENIED**.

## IV. CONCLUSION

In accordance with the reasoning outlined above, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's claim is **DISMISSED WITH PREJUDICE**. Furthermore, the parties are hereby **ORDERED** to file nothing further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they may feel entitled, on any matter herein addressed, from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED**.

### *FINAL JUDGMENT*

For the reasons stated in the Court's Order entered this date, all claims against Defendant USX are **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.