SIERRA CLUB OF MISSISSIPPI, INC., A Mississippi Non–Profit Corporation; Louis Miller, an individual; and Deborah J. Dawkins, an individual, Plaintiffs,

v.

CITY OF JACKSON, MISSISSIPPI, A Municipal Corporation, Defendant.

No. Civ.A.3:98CV153BN.

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 15, 2001.

---

**34.** The *Daubert* factors are non-exclusive and not all factors apply to each case. Here only factors 1 and 2 are applicable.

Richard A. Freese, Langston, Sweet & Freese, P.A., Birmingham, AL, Thomas R. Frazer, II, Frazer Davidson, P.A., Jackson, MS, for Sierra Club, of Mississippi, Inc. a Mississippi non-profit corporation, plaintiff.

Thomas R. Frazer, II, Frazer Davidson, P.A., Jackson, MS, for Louis Miller, Deborah J. Dawkins, plaintiffs.

Sarah A. O'Reilly–Evans, Michael Jeffrey Wolf, City Attorney's Office, Jackson, MS, Terry Wallace, Terrell S. Williamson, Office of the City Attorney, Jackson, MS, for City of Jackson, Mississippi, a Municipal Corporation, defendant.

### *OPINION AND ORDER*

BARBOUR, District Judge.

This cause is before the Court on the cross Motions for Summary Judgment of Plaintiffs and Defendant as well as the Motion of Defendant to Seal Court Records. Having considered the Motions, the Responses, and the Rebuttal, the Court finds that the Motion for Summary Judgment of Defendant is well taken and should be granted and that the Motion for Summary Judgment of Plaintiffs is not well taken and should be denied. Further, the Court finds that the Motion to Seal Court Records of Defendant is not well taken and should be denied.

## I. Factual Background

Plaintiffs Sierra Club of Mississippi ("the Sierra Club"), Louis J. Miller ("Miller"), Legislative Director of the Mississippi Chapter of the Sierra Club, and Deborah J. Dawkins ("Dawkins"), Chair of the Mississippi Chapter of the Sierra Club, have brought suit against the City of Jackson, Mississippi ("the City") alleging various violations of the Water Pollution Prevention and Control Act, 33 U.S.C. §§ 1251 et seq. ("the Act"). Under the Act, it is illegal to discharge pollutants into the navigable waters of the United States without a permit issued under the National Pollutant Discharge Elimination System ("NPDES"). See 33 U.S.C. § 1342.

The City straddles a ridge the east side of which drains into the Pearl River and the west side of which drains into Bogue Chitto Creek, a tributary of the Big Black River. The City operates three wastewater treatment facilities, the Savannah Street facility which discharges into the Pearl River, the Trahon facility which discharges into the Pearl River, and the Presidential Hills Subdivision facility which discharges into Bogue Chitto Creek. Each of these facilities has been issued a NPDES permit pursuant to the Act by the Mississippi Department of Environmental Quality ("the DEQ").

During the period January 28, 1995, to December 1, 1997, the City reported to the Mississippi Office of Pollution Control thirty-two spills of raw sewage from various points in its sewage collection system. This system feeds the raw sewage into the wastewater treatment facilities. Two of the thirty-two reports actually involved spills from private facilities not owned or controlled by the City, but were nevertheless reported by the City. Plaintiffs rely on these thirty-two reports by the City and claim that they are "admissions" by the City that it violated the NPDES permits for the three treatment facilities. Accordingly, Plaintiffs maintain that the City has polluted the Pearl River and Bogue Chitto Creek with these spills. However, the City argues that the spills were from its collection system which delivers raw sewage to the treatment plants rather than from the plants themselves, and that as a result, there has been no violation of the NPDES permits assigned to the waste water treatment facilities. The City further argues that Plaintiffs have failed to show that any pollutants from these spills ever reached the Pearl River or Bogue Chitto Creek.

Plaintiffs and the City have filed cross Motions for Summary Judgment.[1] The Court will now consider these Motions along with the Motion of the City to Seal Court Records.

## II. The Motions for Summary Judgment

### A. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

---

1. The Court notes that these Motions have been outstanding for nearly two years, and that the case itself was filed almost three years ago. This litigation has been delayed for the better part of a year due to a settlement agreement between the parties that failed and the resolution of the Motion filed to enforce that settlement agreement. In addition, numerous extensions of time have been granted to both parties.

fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington. v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

## B. Analysis

In their respective Motions for Summary Judgment, both Plaintiffs and the City address the issue of standing. The Sierra Club, Miller, and Dawkins assert that they each have standing, while the City maintains that none of them do. Plaintiffs bring this suit under 33 U.S.C. § 1365 which allows individual citizens to sue to enforce the provisions of the Act. Even though section 1365 provides the statutory authority for citizen enforcement of the Act, Plaintiffs must nonetheless demonstrate that they possess the traditional requirements of standing. *See, e.g., Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119–20 (3d Cir.1997). The United States Supreme Court has recognized that "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In addition, the "party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The three elements of standing are as follows:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant", and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61, 112 S.Ct. 2130 (internal citations omitted). In order for an organization such as the Sierra Club to establish standing, additional requirements must be met. Accordingly, an organization has standing:

> to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the requested relief requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The City does not contest Plaintiffs' assertion that the interests that they seek to protect are germane to the purpose of the Sierra Club, or that the participation of the individual members of the Sierra Club in this lawsuit is necessary. Instead, the City argues that none of the members of the Sierra Club have standing to sue in their own right.

The Sierra Club asserts that there are two distinct classes among its members that have standing. The first are "riparian land owners along the Pearl River and its tributaries [whose] property is adversely affected by the discharge of pollutants into those waters." Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 9; Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment, at 6. The second class is those members "who would otherwise enjoy various activities in, on and along the river such as canoeing, fishing, hiking, camping, hunting and nature stud-

ies [and] are unable to do so due to the river's current condition." *Id.* As evidence that some of its members are landowners whose property is affected by the alleged pollution, the Sierra Club refers the Court to Exhibit Three to Plaintiffs' Motion for Summary Judgment, which is also Exhibit Three to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

█ Exhibit Three is the Affidavit of Plaintiff Louis Miller. The only statement that remotely concerns where members of the Sierra Club own land is as follows: "The Sierra Club of Mississippi is a non-profit Mississippi Corporation with over 1,000 members, most of whom live in the metropolitan Jackson area near the Pearl River and its environs." Exhibit Three to Motion for Summary Judgment of Plaintiffs, at 1. Nothing in this statement of Miller specifically asserts that any of the members of the Sierra Club actually owns property that is located on the Pearl River. Even if certain members do own such property, nowhere in the Affidavit does Miller allege that such land owners have suffered damage as the result of any pollutant. Accordingly, the Court finds that this Affidavit does not establish a genuine issue of material fact as to whether members of the Sierra Club own property along the Pearl, and whether such property has suffered from the effects of pollution by the City. Therefore, as this Affidavit is Plaintiffs' only proffered evidence of this assertion, the standing of the Sierra Club cannot be based upon any alleged land ownership by its members.

As such, the only remaining assertion of standing on the part of the Sierra Club is the recreational and aesthetic enjoyment of the Pearl River and Bogue Chitto Creek by its members.[2] This claim is identical to

---

**2.** The Court notes that in the Complaint, Plaintiffs claim that the City has impermissibly discharged waste water into both the Pearl River and Bogue Chitto Creek. However-

er, in presenting their standing argument, Plaintiffs have only asserted a recreational and aesthetic interest in the Pearl River. While a reference is made to Dawkins' enjoy-

the claim of standing made by Plaintiffs Miller and Dawkins and, therefore, a resolution of whether Miller and Dawkins have standing on this basis will resolve whether the Sierra Club has met its burden of establishing standing.

Plaintiff Miller asserts that he "has for some time enjoyed recreations [sic] activities upon and near the Pearl River and its environs." Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 3; Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment, at 2. Plaintiff Dawkins argues that she "has for some time enjoyed recreational activities upon and near the Pearl River and its environs, including but not limited to frequent outings on the Big Black River." *Id.* Miller and Dawkins further assert that they, as well as other members of the Sierra Club, "are recreational users of the Pearl River and its environs and enjoy hiking, canoeing, viewing the rivers and wildlife and other recreational pursuits involving the Pearl River and its environs and the land adjacent thereto." *Id.* Thus, the question before the Court is whether Miller and Dawkins' allegedly diminished recreational and aesthetic interests in the Pearl River constitutes "injury" for the purposes of standing.

The City asserts that any such diminution does not constitute injury. However, the Supreme Court has held that the "desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for the purpose of standing." *Lujan,* 504 U.S. at 562–63, 112 S.Ct. 2130. By analogy, the

Court finds that the same is true for a natural resource such as the Pearl River. Nevertheless, the " 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 563, 112 S.Ct. 2130.

■ In *Lujan,* the plaintiffs asserted that various projects on foreign soil in which the United States was involved threatened several species of animal. As injury, the plaintiffs claimed that they had visited these countries in the past to observe these animals, and that they intended to return in the future to do the same. The Supreme Court held:

> That the women "had visited" the areas of the projects before the projects commenced proves nothing. As we have said in a related context, " 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' " And the affiants' profession of an "inten[t]" to return to the places they had visited before-where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species-is simply not enough. Such "some day" intentions-without any description of concrete plans, or indeed even any specification of when some day will be-do not support a finding of the "actual or imminent" injury that our cases require.

*Id.* at 564, 112 S.Ct. 2130 (internal citations omitted). Accordingly, Miller and Daw-

---

ment of frequent outings on the Big Black River, no further mention is made of either the Big Black or Bogue Chitto Creek. For this reason, the Court finds that Plaintiffs have failed to state with sufficient particularity the same recreational or aesthetic interest in the Big Black River as they have for the Pearl River. As such, Plaintiffs do not have

standing to sue over any discharge into Bogue Chitto Creek. Accordingly, the Court will evaluate the standing of Plaintiffs only in regard to the Pearl River. The Court notes, however, that this point is of little moment as the analysis in respect to the Big Black River and Bogue Chitto Creek would be the same as that of the Pearl River, as discussed *infra.*

kins' past activities upon the Pearl River are irrelevant in the determination of whether they have suffered injury in fact unless they can demonstrate that the alleged pollution creates continuing, present adverse effects upon the recreational and aesthetic qualities of the Pearl River. In addition, Miller and Dawkins must show that they have concrete plans to utilize the Pearl River for their recreational and aesthetic interests.

For the purposes of ruling upon these Motions for Summary Judgment, the Court will assume that Plaintiffs have made a proper showing of continuing pollution, as well as concrete plans to use the Pearl River. However, the blanket assertions that Miller and Dawkins enjoy recreational activities along the river, such as hiking and canoeing, give the Court concern that these plans might not be of the "concrete" nature as required by *Lujan*. Nevertheless, the Court finds that a lengthy resolution of the injury in fact issue is not necessary as the crux of this analysis turns upon the second element of standing.[3]

Under *Lujan*, Miller and Dawkins next bear the burden of establishing that their alleged injuries are fairly traceable to the conduct of the City. In *Friends of the Earth v. Crown Cent. Petroleum Corp.*, 95 F.3d 358 (5th Cir.1996), a case analogous to the one *sub judice*, the United States Court of Appeals for the Fifth Circuit examined the "fairly traceable" requirement of standing in the context of a citizen suit under the Act for a violation of NPDES permits. The plaintiffs were an environmental group that brought suit against Crown Central, operator of an oil refinery, alleging that Crown Central was discharging pollutants into Black Fork Creek in excess of its NPDES permit limits. In order to establish standing, members of the organization submitted affidavits asserting that they had a health, economic recreational, aesthetic, and environmental interest in Black Fork Creek, Prairie Creek, the Neches River, and Lake Palestine. However, the court found that the evidence presented by the plaintiffs revealed that they used only Lake Palestine and, as a result, plaintiffs could only assert standing based upon this body of water, and not the other three.

Finding that the analysis hinged upon the "fairly traceable" requirement, the court assumed, without ruling, that plaintiffs had suffered injury in fact based upon their use of Lake Palestine. However, the court noted that Lake Palestine is a body of water located three tributaries away and eighteen miles downstream from where the discharges from the refinery occurred. Accordingly, based upon the distance and removal of Lake Palestine from the refinery, the court held that the

**3.** The Court has doubts as to whether the recreational activities of Miller and Dawkins are actually harmed by the alleged pollution complained of. As for Miller, he states in his Deposition that he boats and camps on an area of the Pearl River located in Madison County, which is upstream from Jackson, Mississippi, and thus unaffected by any discharge from either the Savannah Street facility or the Trahon facility. Deposition of Miller, .at 17–18. Miller further stated when he canoes, he does so on the potion of the Pearl River between the spillway of the Ross Barnett Reservoir and Highway 25, also known as Lakeland Drive. Again, the Court notes that this stretch of the Pearl River is apparently upstream from the treatment facilities.

In regard to Dawkins, she states in her deposition that she used the Pearl River until she moved away from Jackson in 1985. Deposition of Dawkins, at 11. Accordingly, the Court is left 'with the impression that these individual Plaintiffs either do not use the portion of the Pearl River that would be affected by such pollution, or, as in the case of Dawkins, that they do not use the Pearl River for recreation at all.

environmental group "offered no competent evidence that [the discharges of the refinery] have made their way to Lake Palestine or would otherwise affect Lake Palestine." *Id.* at 361. Thus, the issue before this Court is whether there is a nexus between the diminishment of Miller and Dawkins' recreational and aesthetic enjoyment of the Pearl River and the alleged pollution by the City.

Plaintiffs assert that such a nexus does exist because the thirty-two discharges unquestionably affect the recreational and aesthetic qualities of the Pearl River. While the City does claim responsibility for thirty of the thirty-two discharges asserted by Plaintiffs, the City argues that none of the thirty-two discharges occurred at the Savannah Street waste water treatment plant as alleged by Plaintiffs. Further, the City maintains that based upon the location of each of the thirty-two discharges, none of the pollutants were released into the Pearl River or its tributaries, but instead were absorbed by the ground where the leaks or spills occurred. Accordingly, the City asserts that even if Plaintiffs' recreational and aesthetic interests in the Pearl River have been harmed, such injury is not the result of the thirty-two discharges cited by Plaintiffs.

In support of this argument, the City refers to the Affidavit of David Willis, Acting Division Manager of the Water/Sewer Utilities Division within the City of Jackson Department of Public Works, and the Affidavit of Robert Maines, Regional Waste Water Treatment Manager for ST Environmental Services, Inc. and project manager for the Contract between the City and ST Environmental Services, Inc. for the operation of the Savannah Street waste water treatment facility and the Trahon waste water treatment facility. Both Willis and Maines assert that none of the thirty-two discharges occurred at the Savannah waste water treatment facility or either of the other two waste. water treatment facilities operated by the City, whose discharges are released directly into either the Pearl River or Bogue Chitto Creek. In addition, Willis asserts that none of the thirty-two discharges were otherwise released into the Pearl River, or any of its tributaries. Plaintiffs do not respond to this affidavit testimony in their Response to the Motion for Summary Judgment of the City, nor does any of the evidence presented by Plaintiffs in any way contradict these Affidavits.[4]

■ Accordingly, the Court finds that even if these thirty-two incidents constituted illegal discharges in violation of the Act, there is no evidence that any of them occurred, as Plaintiffs assert, at any of the waste water treatment facilities of the City that discharge directly into the Pearl Riv-

---

4. Exhibit Twelve to Plaintiffs' Response to Defendant's Motion for Summary Judgment contains an Order of the Mississippi Commission on Environmental Quality dated June 16, 1998. While Plaintiffs do not specifically discuss this Order in their briefs, the Court notes that other than the thirty-two discharges cited by Plaintiffs, this Order is the most significant evidence that the City is in violation of the Act. In the Order, the Commission specifically found that the City had violated its NPDES permit for the Savannah waste water treatment facility on several occasions by violating the flow limitation as well as well as the total suspended solids limitation. Because Plaintiffs have not addressed how these violations, if proven, support standing, the Court is left to speculate as to whether there is a nexus between these alleged violations and Plaintiffs' recreational and aesthetic interests. The Court finds that this exhibit is not sufficient to confer standing because Plaintiffs have not put forward any evidence that these excesses, even though they may have been released directly into the Pearl River, have harmed the recreational and aesthetic qualities of the Pearl River to a recognizable extent greater than when the discharges of the City are within the limits of its NPDES permits.

er. In addition, the Court also finds that there is no evidence that the thirty-two discharges were otherwise released into the Pearl River via other means, nor do Plaintiffs assert any evidence that the pollutants from these discharges reached the Pearl River through natural effects such as runoff. Therefore, under the holdings of *Lujan* and *Crown Central,* no genuine issue of material fact remains that any injury suffered by Plaintiffs is not fairly traceable to the thirty-two discharges of untreated waste water. For this reason, no Plaintiff has established standing to bring this suit, and the Motion for Summary Judgment of the City is granted.

### C. The Alternative Findings of the Court

In the event that this Court has improvidently entered summary judgment in favor of the City on the basis that Plaintiffs lack standing, the Court sets forth the following alternative findings which also entitle the City to summary judgment.

#### 1. The Citizen Suit Provision of the Act

Plaintiffs base their Complaint on the theory that the thirty-two spills constitute a violation of the NPDES permits of the three waste water treatment facilities of the City. As such, their suit is pursuant to the provision of the Act that provides that a citizen may sue any person or entity on the basis that such person or entity has violated "an effluent standard or limitation under this chapter...." 33 U.S.C. § 1365(a)(1). Section 1365 further defines an "effluent standard or limitation under this chapter" as "a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter...." § 1365(f). The NPDES permits for the three waste water treatment facilities of the City were issued pursuant to section 1342.

The City maintains that there is no evidence that the thirty-two spills complained of violated the NPDES permits for the treatment facilities and, as a result, the claim of Plaintiffs does not meet the requirements for a citizen suit under section 1365. A review of the NPDES permits of the water treatment facilities of the City reveals that each permit regulates the amount of wastewater that each treatment plant may release into either the Pearl River or Bogue Chitto Creek. Thus, as the Court understands the permits, in order for the city to be in violation of the permits, as opposed to just violating the Act generally, the illegal discharge into either the Pearl River or Bogue Chitto Creek must occur through one of the three waste water treatment facilities.

Plaintiffs have put forward no evidence that any of the thirty-two spills from the collection system of the City occurred at any of the three treatment facilities. Thus, even if pollutants did make it to the Pearl River or Bogue Chitto Creek as a result of the spills, there is no violation of the NPDES permits because those permits only regulate discharge by the treatment facilities. Accordingly, where Plaintiffs base their suit on the violation of NPDES permits, Plaintiffs may not prevail in a citizen suit under the Act where there is no evidence of a violation of a NPDES permit. For this reason, the Court finds that Plaintiffs have not demonstrated that there is a genuine issue of material fact as to whether they are entitled to bring a citizen suit under section 1365 as there is no evidence that the discharges of the City from its sewer collection system were violations of the NPDES permits of the city issued pursuant to section 1342. Therefore, the City is alternatively entitled to summary judgment on this basis.

#### 2. The Affirmative Defense of Upset

While the City maintains that Plaintiffs have no standing to bring this suit, the

City also argues that even if it has violated the applicable NPDES permits, it is entitled to rely on the affirmative defense of "upset" for those violations. Such a defense is provided for in both the permits themselves as well as by Environmental Protection Agency regulation. *See* 40 C.F.R. 122.41(n). An upset is defined as "an exceptional incident in which there is unintentional and temporary noncompliance with technology based permit effluent limitations because of factors beyond the reasonable control of the permitee." 40 C.F.R. 122.4(n)(1). An upset does not include "noncompliance to the extent caused by operational error, improperly designed treatment facilities, inadequate treatment facilities, lack of preventative maintenance, or careless or improper operation." *Id.*

In order to establish the affirmative defense of upset, a defendant must show that:

  i) An upset occurred and that the permittee can identify the cause(s) of the upset;

  ii) The permitted facility was at the time being properly operated; and

  iii) The permittee submitted notice of the upset as required in paragraph (1)(6)(ii)(B) of this section (24 hour notice).

  iv) The permitee complied with any remedial measures required under paragraph (d) of this section.

40 C.F.R. 122.41(n)(3).

The City asserts that each of the thirty-two spills was an upset and that the cause of each is set forth in the Wastewater Bypass Reports submitted by the City to the Mississippi Office of Pollution Control. *See* Exhibit A to Complaint. Second, the City cites to the Affidavit of Robert Maines in which Maines states that at all relevant times, the Savannah Street waste water treatment facility was being operated and maintained properly. Third, the City maintains that each of the upsets was

reported orally within the required twenty-four hours after the City had notice of the upset. Finally, the City asserts that proper remedial measures were taken as each of the areas where the spills occurred were repaired, cleaned, and disinfected. Affidavit of Robert Maines, at 3–4.

In Plaintiffs' Response to the Motion for Summary Judgment of the City, Plaintiffs do not address the affirmative defense of upset, much less present evidence that the City is not entitled to rely on such a defense. The Court finds that based upon the evidence presented by the City, the City has properly established that each of the thirty spills for which the City is responsible were upsets, and that the City complied with all requirements in order to rely on the defense of upset. Furthermore, Plaintiffs have failed to establish that a genuine issue of material fact remains as to this defense. For these reasons, the Court finds alternatively that the City is entitled to summary judgment on the affirmative defense of upset.

### III. The Motion to Seal Records

A review of the Court's docket reveals that on May 26, 2000, the City filed a Motion to Seal Court Records. The Motion argues that a May 5, 2000, Order of this Court that asserts that the conduct of Terry Wallace and Terry Williamson, both counsel for the City, may be subject to discipline should be sealed until the Court issues a ruling based upon the evidence presented at a May 12, 2000, hearing. The City maintains that such an order is necessary to protect the reputations of Wallace and Williamson should this Court find that no sanctionable conduct occurred. Plaintiffs have never responded to the Motion.

Obviously, this Motion was made prior to the entry of this Court's September 28, 2000, Opinion and Order in which Williamson's conduct was found to be sanctionable,

and sanctions were imposed. In addition, that Opinion and Order found that while Wallace's conduct was not sanctionable, he had failed in his supervision of Williamson. Accordingly, because: (1) the Opinion and Order has been issued in regard to the May 12, 2000, evidentiary hearing, and (2) the Conduct of Williamson was found to be sanctionable, the Court finds that the request of the City to seal the May 5, 2000, Order and the transcript of the May 12, 2000, hearing is without merit and no such action is warranted. Therefore, the Motion is denied.

### IV. Conclusion

Based upon the reasoning set forth in this Opinion and Order:

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Plaintiffs [12–1] is not well taken and is hereby denied.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of Defendant [23–1] is well taken and is hereby granted.

IT IS FURTHER ORDERED that the Motion to Seal Court Records of Defendant [41–1] is not well taken and is hereby denied.

A separate judgment finally dismissing this case with prejudice at the cost of Plaintiffs will be entered this day in accordance with Rule 58 of the Federal Rules of Civil Procedure.