**ATLANTIC STATES LEGAL FOUN-DATION, INC., and Mohawks Agree On Safe Health, Plaintiffs,**

v.

**Rick HAMELIN, Defendant.**

**No. 5:99–CV–1077 (FJS/GJD).**

United States District Court, N.D. New York.

Aug. 22, 2001.

---

Sean P. Lynch, Atlantic States Legal Foundation, Syracuse, NY, for Plaintiffs.

Michael Premisler, Office of Michael Premisler, Carle Place, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

In a Complaint filed on July 12, 1999, Plaintiffs assert that Defendant violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), which requires that a National Pollutant Discharge Elimination System ("NPDES") permit be obtained prior to discharging pollutants into navigable water, and Section 404 of the CWA, 33 U.S.C. § 1344, which requires that a permit be obtained prior to discharging dredge into a navigable waterway. Plaintiffs seek declaratory and injunctive relief [1] as well as the imposition of civil penalties.

Presently before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Practice or, in the alternative, for summary judgment pursuant to Rule 56.[2] Also before the Court is Plaintiffs' cross-motion to amend their Complaint.

## II. BACKGROUND

Plaintiffs Atlantic States Legal Foundation ("ASLF"), a national non-governmental organization which provides legal and technical expertise to citizens pursuing environmental protection and restoration, and Mohawks Agree on Safe Health ("MASH"), a community organization comprised of First Nation peoples whose purpose is to foster traditional education and stewardship of Native American lands, bring this action pursuant to the CWA, 33 U.S.C. § 1365, which provides for citizen suits, alleging that Defendant violated the CWA when he discharged pollutants into a navigable waterway without a permit.

Plaintiffs allege that on October 30, 1998, Defendant Rick Hamelin, who is the owner and operator of a gas station and convenience store, discharged dirt and gravel ("fill material") into a thriving wetland area on the St. Regis Mohawk Reservation in order to create a 15–acre commercial parcel in violation of the CWA. Defendant concedes that the "discharge" occurred but maintains that it was a one-time event. *See* Def.'s Statement of Material Facts at ¶ C.

By letter dated March 12, 1999, Plaintiffs informed Defendant and the Saint Regis Mohawk Tribe of Plaintiffs' intention to commence a lawsuit. On May 11, 1999, an "Order on Consent" between the Saint Regis Mohawk Tribe and Defendant was issued in which Defendant agreed to pay a $5,000 fine, to pay $20,000 so that mitigation wetlands could be purchased and to present the Tribe with a plan for restoration of the watercourse. Additionally, on December 17, 1999, the EPA is-

---

1. Plaintiffs request that the Court enjoin Defendant from engaging in further violations of the CWA and that the Court "[i]ssue a remedial injunction ordering Defendant to pay the cost of any environmental restoration deemed necessary and proper by the Court ...." *See* Complaint at ¶ 22.

2. In light of the fact that, in reaching its decision, the Court considered documents beyond the pleadings, the present motion is being considered as a motion for summary judgment.

sued an Administrative Order that precluded Defendant from any further filling of wetlands.

A motion argument was held on May 12, 2000. At that time, the Court reserved decision on the parties' motions and scheduled a follow-up conference. During the conference, which was held on June 9, 2000, the Court granted Defendant's motion to dismiss for the reasons stated at the conference and set-forth below.[3] However, as discussed below, this dismissal is intended to apply to the civil penalties portion of the claim but not to the portion of the claim that seeks declaratory and injunctive relief.[4]

## III. DISCUSSION

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted, including the pleadings, depositions, answers to interrogatories and affidavits, in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir.1997); *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51

(2d Cir.1993). A genuine issue of fact exists when the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Rovtar v. Union Bank of Switz.*, 852 F.Supp. 180, 182 (S.D.N.Y.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)). Moreover, in determining whether such a fact question exists, the court must draw all reasonable inferences in favor of the non-moving party. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

### B. Standing and Plaintiffs' Motion to Amend the Complaint

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). When the plaintiff in an action is an association, such "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are ger-

---

**3.** A status telephone conference was also held on August 7, 2001.

**4.** The Court recognizes that, to some extent, this ruling diverges with the oral ruling provided during the conference. However, upon further examination of the facts and the applicable case law, the Court finds that, at the present time, Plaintiffs should be permitted to maintain their claim for declaratory and injunctive relief.

As discussed during the status conference held on August 7, 2001, the Saint Regis Mo-

hawk Tribe has made progress in its attempts to devise a suitable remediation plan for the wetlands at issue. The EPA has also been involved in this process. Additionally, the Saint Regis Mohawk Tribe has agreed to provide Plaintiffs with information about its plan for the wetlands.

In light of these facts, the Court finds that it is appropriate to stay this action until such time that the remediation plan has been completed and has been acted upon by the EPA.

mane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 181, 120 S.Ct. 693 (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

Defendant contends that Plaintiffs are unable to satisfy the requirements outlined above and, thus, do not have standing to bring this claim.

### 1. "Injury in Fact"

With respect to the "injury in fact" requirement, the focus is not on the injury to the environment, but rather on the injury to the plaintiff. *See id.* According to the Supreme Court, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Id.* at 183, 120 S.Ct. 693 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)) (other citation omitted); *see also Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.,* 913 F.2d 64, 71 (3d Cir.1990) (holding that the injury "need not be large, an 'identifiable trifle' will suffice." (citing *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973))).

Defendant contends that Plaintiffs have only made generalized grievances of injury and, thus, have not shown "injury in fact." To support this assertion, Defendant points to the fact that in their Complaint, Plaintiffs assert the following:

> Plaintiffs are citizen groups whose members enjoy viewing wetland flora and fauna in a natural state. These members also benefit from the wetland area at issue, in that wetlands act as a filtering system for neighborhood creeks and rivers specifically and the local watershed in general. The members of ASLF and MASH have lost the benefits of the aforementioned wetlands as a result of Defendant's actions.

*See* Complaint at ¶ 11.

Defendant contends that, even assuming that this assertion is true, Plaintiffs fail to satisfy the first prong of the standing analysis.[5]

To support their claim that they have suffered "injury in fact," Plaintiffs have submitted the affidavits of five individuals who are members of the Plaintiff organizations. The affiants state that they are members of at least one of the Plaintiff organizations and discuss their use of the wetlands at issue and the impact that Defendant's actions had on such use. For example, affiant Dave Arquette states that he formerly "walk[ed] the perimeter of the wetland every day" and also use to cross country ski around the wetland. *See* Affidavit of Dave Arquette, sworn to Feb. 22, 2000 ("Arquette Aff."), at ¶¶ 7, 8. Arquette further states that he previously enjoyed viewing and photographing plants and animals located on and around the wetland and that as a result of Defendant's activities, such opportunities have been "destroyed" or impacted. *See id.* at ¶ 11.

---

**5.** Defendant also asserts that the property at issue is "private[ ] land in 'Indian Country.' " *See* Def.'s Mem. of Law at 8. Thus, Defendant contends that "it would be impossible for [P]laintiffs' members to 'enjoy viewing' these wetlands in their natural state without trespassing on private property." *Id.*

Plaintiffs correctly assert that, given the facts of the present case, this argument is irrelevant. All affiants upon whom Plaintiffs rely are members of the Saint Regis Mohawk Tribe. *See* Pls' Mem. of Law at 16. Moreover, Defendant's alleged activities not only impacted his land but also the surrounding wetlands. *See id.*

The affidavits submitted in the present case are similar to those that the plaintiffs submitted in *Public Interest Research Group of N.J.*, 913 F.2d at 71. In that case, the plaintiff organizations submitted affidavits from five of their members. The affiants stated that they hiked, jogged and bicycled in the area at issue. *See id.* Based upon the affidavits and the assertions set forth in the complaint, the court found that the plaintiffs had "state[d] an injury sufficient to satisfy the requirements of Article III." *Id.*

■ Additionally, as noted, Plaintiffs move to amend their Complaint. In their proposed amended complaint, Plaintiffs expand on the purposes of their organizations and whether this lawsuit is germane to those purposes.[6] *See* Pls' Proposed Amended Complaint at ¶¶ 11–15. In light of the fact that there has been no showing of bad faith or prejudice, or amendment of the Complaint is futile, the Court grants Plaintiffs' motion to amend.

■ Based upon the assertions set forth in the Proposed Amended Complaint as well as the statements contained within Plaintiffs' affidavits, the Court finds that Plaintiffs have shown an injury in fact.

## 2. Traceability of the Injury to the Challenged Action and Likeliness of Redress

"[T]he fairly traceable element [of the standing analysis] focuses on the connection between the defendant's conduct and the plaintiff's injury," while "the redressability factor focuses on the connection between the plaintiff's injury and the judicial relief sought." *Public Interest Research Group of N.J.*, 913 F.2d at 73 (citation omitted).

Plaintiffs have provided sufficient evidence of the connection between Defendant's activities and the injury members of their organization have incurred. Moreover, Plaintiffs are seeking injunctive relief which would impact the wetlands and ultimately the injury Plaintiffs have allegedly encountered. Accordingly, the Court finds that Plaintiffs satisfy the standing requirements.

## C. Clean Water Act Statutory Framework

In 1972, Congress enacted the Federal Water Pollution Control Act, also known as the CWA, with the aim that it could "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Under the

---

**6.** Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint is to "be freely granted when justice so requires." Fed.R.Civ.P. 15(a).

" 'The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.' " *Pritchett v. Artuz*, No. 99 Civ. 3957, 2001 WL 506215, *2 (S.D.N.Y. May 14, 2001) (quotation and citation omitted). However, a motion to amend may be denied when such amendment is futile. *See Republic Nat'l Bank v. Hales*, 75 F.Supp.2d 300, 308 (S.D.N.Y.1999) (citation omitted). Although "[a] motion to amend a complaint is particularly disfavored where the amendment is proposed in response to a summary judgment motion[,]" *Williams v. Bank Leumi Trust Co. of N.Y.*, No. 96 CIV. 6695, 2000 WL 343897, *2 (S.D.N.Y. Mar.31, 2000) (citations omitted); "delay alone is insufficient to justify the denial of a motion to amend." *Pritchett*, 2001 WL 506215, at *2 (citation and footnote omitted). Moreover, where, as in the present case, the "plaintiff's motion to amend the complaint and [the] defendant's motion for summary judgment are presented together, it is proper for the Court to treat [the] motion for summary judgment as addressed to the complaint in the form in which it is sought to be amended." *Rogen v. Scheer*, No. 86 CIV. 2058, 1991 WL 33294, *3 (S.D.N.Y. Feb.22, 1991) (citations omitted).

CWA, except as permitted under certain exceptions, "the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a).[7]

The CWA also provides that "any citizen may commence a civil action on his own behalf—... against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under [the CWA] ...." 33 U.S.C. § 1365(a). However, as discussed below, the CWA significantly limits a citizen's right to bring a citizen enforcement suit under the CWA.

In particular, the citizen must provide notice of the alleged violation to the Administrator of the EPA, to the state enforcement agency of the state in which the alleged violation occurred, and to the alleged violator at least sixty days before the citizen may file a citizen suit. *See* 33 U.S.C. § 1365(b)(1)(A). This notice requirement allows government agencies to take action and also allows the violator to cure the violation, either of which would obviate the need for a citizen suit. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (recognizing that "the citizen suit is meant to supplement rather than to supplant governmental action.").

Section 505(b)(1)(B) of the CWA further provides that no citizen suit may be commenced "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance ...." 33 U.S.C. § 1365(b)(1)(B). In addition, as provided by section 505(a), citizen suits are precluded if a State has commenced and is diligently prosecuting an action under a comparable State law or if the EPA Administrator or State has issued a final order, not subject to judicial review, and the violator has paid the penalty assessed. *See* 33 U.S.C. § 1319(g)(6)(A).

Defendant asserts that Plaintiffs' lawsuit may not be maintained because the CWA does not allow suits when another governmental agency has already acted to resolve the problem because the issue becomes moot. Moreover, Defendant contends that citizen suits cannot be maintained for past and non-recurring violations.

### 1. Actions of the EPA and the Saint Regis Mohawk Tribe

Defendant claims that under the Supreme Court's holding in *Gwaltney*, 484 U.S. 49, 108 S.Ct. 376, and § 1319(g)(6)(A), Plaintiffs are unable to maintain this action because Defendant is complying with the remediation order of another government agency.[8] Defendant makes this assertion based upon the fact that on May 11, 1999, the Saint Regis Mohawk Tribe issued an Order on Consent. *See* Affidavit of Rick Hamelin, sworn to Jan. 31, 2000 ("Hamelin Aff."), at Exh. A. Moreover, on December 17, 1999, the United States EPA issued an Administrative Order whereby Defendant was directed to cease any further filling of wetlands and to submit details regarding the October 30th incident. *See id.* at Exh. B.

Plaintiffs make three main assertions with respect to Defendant's claim that the present suit is precluded because of the Order on Consent and the EPA Administrative Order. First, Plaintiffs contend

---

7. The "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source," *see* 33 U.S.C. § 1362(12), and a "pollutant" is defined as materials including rocks, sand and dirt, *see* 33 U.S.C. § 1362(6).

8. Defendant also claims that it would be bad policy to allow both a private citizen and a government agency to pursue corrective measures independent of one another.

that because the EPA Administrative Order was issued after the present suit was filed, it does not moot the suit. Second, Plaintiffs assert that the Order on Consent that the Saint Regis Mohawk Tribe issued may not be viewed as a "State" initiated action or final order. Finally, Plaintiffs contend that neither the Saint Regis Mohawk Tribe nor the EPA has conducted a "diligent prosecution."

### a. EPA Administrative Order

As noted, Plaintiffs provided Defendant with notice of the alleged environmental violation on March 12, 1999 and then filed their Complaint on July 12, 1999. The EPA issued its Administrative Order on December 17, 1999.

Although a citizen is prohibited from filing a lawsuit when the State is diligently prosecuting an action or has issued a final order, see 33 U.S.C. §§§ 1319(g)(6)(A)(i), 1319(g)(6)(A)(ii) and 1319(g)(6)(A)(iii); this limitation does not apply when "a civil action under [the citizen suit provision] of this title has been filed prior to commencement of an action under [the administrative enforcement] subsection." [9] 33 U.S.C. § 1319(g)(6)(B).

Based on this provision, Plaintiffs contend that the EPA Administrative Order does not prevent Plaintiffs from pursuing this claim since it was issued several months after the Complaint was filed.

Defendant cites *Atlantic States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124 (2d Cir.1991), to support his assertion that the EPA Administrative Order prohibits Plaintiffs from pursuing the present action.[10] In *Eastman Kodak Co.*, 933 F.2d 124, the Second Circuit considered whether a citizen suit brought pursuant to the CWA could continue after the defendant and state officials reached a settlement regarding the CWA violations. In that case, the plaintiff informed the defendant and the appropriate state and federal agencies that it intended to sue the defendant for violating the terms of its regulatory permit and, after the statutorily required notice period, the plaintiff filed a complaint in federal court. Several months after the complaint was filed, the defendant and the New York State DEC entered into a civil consent order. Pursuant to the terms of the order, the defendant agreed to pay a penalty of $1 million and agreed to take several other actions related to monitoring and providing information about the area. *See id.* at 126. The defendant also entered into a criminal plea agreement with state authorities. *See id.* On appeal, the plaintiff asserted that "in failing to bring an enforcement proceeding during the sixty-day statutory notice period, New York ha[d] forfeited the right to preclude citizen enforcement and that, as a result, the [ ] action [was to]

---

**9.** The EPA may intervene, as a matter of right, in the citizen's federal court action. *See* 33 U.S.C. § 1365(c)(2).

**10.** Defendant also cites *Gwaltney of Smithfield, Ltd.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306, to support his claim that "citizen suits may not be brought where the defendant is complying with the remediation order of another government agency." *See* Def.'s Mem. of Law at 3. However, Defendant appears to be advocating an overly broad interpretation of *Gwaltney*.

In *Gwaltney*, the Supreme Court considered whether a claim could be filed for a "wholly

past" violation of the CWA. The Court held that "the harm sought to be addressed by the citizen suit lies in the present or future, not in the past." *Id.* at 59, 108 S.Ct. 376. The Court also noted that "[p]ermitting citizen suits for wholly past violations of the Act could undermine the supplementary role envisioned for the citizen suit." *Id.* at 60, 108 S.Ct. 376.

In the present case, Plaintiffs allege that Defendant is continuing to violate the CWA because he has failed to obtain an after-the-fact permit and, therefore, this is not a case where the violation is a "wholly past" one.

proceed to trial [ ] notwithstanding the state's subsequent civil and criminal compromise with [the defendant]." [11] *Id.* at 127. According to the court, "[i]f the state enforcement proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence—has eliminated the basis for the citizen suit— we believe that the citizen action must be dismissed." *Id.* Based upon this rationale, the court concluded that the plaintiff was unable to challenge the terms of the settlement between the defendant and the state unless there was "a realistic prospect that the violations alleged in [the plaintiff's] complaint will continue notwithstanding the settlement." *Id.*

Plaintiffs contend that the holding in *Eastman Kodak Co.* should not be applied to the present case for two reasons. First, Plaintiffs contend that other courts have recognized that the decision is in conflict with the language of the statute and that when reaching a decision in *Atlantic States Legal Found., Inc. v. Pan American Tanning Corp.*, 993 F.2d 1017 (2d Cir.1993), the Second Circuit opted not to follow the decision in *Eastman Kodak Co.* because it found the two cases to be factually distinguishable. *See Pan American Tanning Corp.*, 993 F.2d 1017 (court held that the plaintiffs' claim was not moot even though the defendant entered into a settlement agreement with a local agency approximately four months after the complaint was filed); *see also Long Island Sound-keeper Fund, Inc. v. N.Y.C. Dep't of Envtl. Prot.*, 27 F.Supp.2d 380 (E.D.N.Y.1998) (court held that the plaintiff, who brought a citizen's group CWA action, was not barred from pursuing the action on the

basis that the New York DEC filed a complaint in state court against the defendant for the CWA violations approximately one-half hour after the plaintiff filed its complaint in federal court); *Natural Resources Def. Council, Inc. v. Loewengart & Co., Inc.*, 776 F.Supp. 996, 1000 (M.D.Pa. 1991) (court agreed with the plaintiff's assertion that *Eastman Kodak Co.* was wrongly decided and found that citizen action could proceed since the Pennsylvania Department of Environmental Resources did not commence an action against the defendant within the sixty-day notice period).

Second, pointing to the terms of the settlement between Defendant and the EPA, Plaintiffs contend that the present case is factually distinguishable from *Eastman Kodak Co.* Plaintiffs claim that the EPA Administrative Order does not settle all of the issues in the case and does not constitute "diligent prosecution." Pursuant to the terms of the EPA Administrative Order, Defendant is required to do the following: (1) "cause no further discharges of dredged or fill materials into the waters of the United States[;]" and (2) provide the EPA with "a report detailing information concerning fill placed on the property." *See* Hamelin Aff. at Exh. B. In contrast, pursuant to the terms of the settlement reached in *Eastman Kodak Co.*, 933 F.2d at 126, the plaintiff was required to pay $1 million in civil fines, $1 million in criminal fines, and an additional $150,000 to support local emergency planning committees.

▇ In light of the time of issuance of the EPA Administrative Order, as well as the fact that the present case is factually

---

**11.** As noted, pursuant to § 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1), a citizen suit may not be commenced unless the plaintiff has given the EPA, the state and the alleged violator sixty days notice. Moreover, § 505(b)(1)(B) of the CWA, 33 U.S.C. § 1319(g)(6)(A)(ii), provides that no citizen

suit may be commenced if the government is "diligently prosecuting" an action involving the same violations. "Taken together, these provisions permit a citizen suit to begin if the appropriate state or federal authorities have not acted within the sixty-day notice period." *Eastman Kodak Co.*, 933 F.2d at 127.

distinguishable from *Eastman Kodak Co.* in that the Administrative Order does not settle all the issues in this case (i.e. it only precludes Defendant from engaging in additional filling of wetlands and requests information from Defendant), the Court declines to grant Defendant's motion for summary judgment based upon the issuance of the Administrative Order.

### b. Saint Regis Mohawk Tribe Order on Consent

As further support for his summary judgment motion, Defendant contends that Plaintiffs' claim is precluded because of the actions taken by the Saint Regis Mohawk Tribe. The Saint Regis Mohawk Tribe issued a cease-and-desist order to Defendant on October 30, 1998. *See* Letter from Saint Regis Mohawk Tribe Council to the Court, dated June 8, 2000. As noted, on March 12, 1999, Plaintiffs provided notice to Defendant, the EPA, the DEC and the Saint Regis Mohawk Tribe, *see* Pls' Statement of Material Facts at Exh. A, and filed their Complaint on July 12, 1999. On May 11, 1999, Defendant and the Saint Regis Mohawk Tribe, Environment Division, entered into an Order on Consent. Pursuant to the terms of that Order, Defendant was required to do the following: (1) pay a $5,000 penalty to the Saint Regis Mohawk Tribe General Account; (2) submit to the Environmental Division of the Tribe "[a] plan for the restoration of an intermittent watercourse, . . ."; (3) submit a "wetlands monitoring plan" to the Environment Division of the Tribe which shall include "the provision that [Defendant] will be responsible for maintaining an 85% survival rate of the wetlands to be established on the banks of the watercourse for five (5) years after the first growing season[;]" (4) submit a "sedimentation and erosion con-

trol plan[;]" (5) submit "[a] schedule for the restoration work[;]" and (6) pay the tribe $20,000 to be used to support the Tribal wetlands program and purchase mitigation wetlands. *See* Hamelin Aff. at Exh. B.

There are two main issues that arise with respect to Defendant's claim that the present suit is precluded. First, it must be determined whether the Saint Regis Mohawk Tribe can be deemed to be a "State" within the meaning of the CWA. This is relevant because, as noted, Plaintiffs are precluded from bringing a claim when a "State has commenced and is diligently prosecuting an action . . ." or when the State has issued a final order which is not subject to further judicial review and has paid a penalty. *See* 33 U.S.C. §§ 1319(g)(6)(A)(ii), 1319(g)(6)(A)(iii).[12] Second, the Court must determine whether the Saint Regis Mohawk Tribe was acting pursuant to a "comparable" state law and whether the action against Defendant was diligently prosecuted.

Under § 518(e) of the CWA, the EPA is authorized to treat an Indian tribe in the same manner as a state for certain purposes, including for enforcement purposes. *See* 33 U.S.C. § 1377(e). Section 1377(e) provides, in pertinent part, that

[t]he Administrator is authorized to treat an Indian tribe as a State for purposes of subchapter II and sections 1254, 1256, 1313, 1315, 1318, 1319, 1324, 1329, 1341, 1342, 1344, and 1346 to the degree necessary to carry out the objectives of this section, but only if—

(1) the Indian tribe has a governing body carrying out substantial governmental duties and powers;

(2) the functions to be exercised by the Indian tribe pertain to the management

---

**12.** Although Plaintiffs focus on § 1319(g)(6)(A)(ii), it appears that if Defendant has already paid the penalty, § 1319(g)(6)(A)(iii) would be applicable. In the following analysis, the Court essentially considers both of these provisions.

and protection of water resources which are held by an Indian tribe, held by the United States in trust for Indians, held by a member of an Indian tribe if such property interest is subject to a trust restriction on alienation, or otherwise within the borders of an Indian reservation; and

(3) the Indian tribe is reasonably expected to be capable, in the Administrator's judgment, of carrying out the functions to be exercised in a manner consistent with the terms and purposes of this Chapter and of all applicable regulations.

*See* 33 U.S.C. § 1377(e).[13]

 This case presents a unique set of facts and circumstances. Although the statutory language of § 1377(e) appears to indicate that the EPA Administrator must make the determination as to whether the Tribe may be treated as a State, there has been no overt determination by the EPA acknowledging that the Saint Regis Mohawk Tribe meets the criteria outlined in § 1377(e). However, the Court finds that the EPA implicitly authorized the actions of the Saint Regis Mohawk Tribe and, given the unique facts of this case, such an implicit authorization is sufficient to support a finding that the Saint Regis Mohawk Tribe acted like a state. The Court bases this finding upon several factors including, but not limited to, the continual representations made to the Court with respect to the relationship between the EPA and the Saint Regis Mohawk Tribe.[14] As a result of this relationship, it appears

---

**13.** Plaintiffs asserts that in addition to the statute, pursuant to 40 C.F.R. 22 Subpart G and also 33 U.S.C. § 1342, the Saint Regis Mohawk Tribe must apply and be approved for such recognition by the EPA.

Although Plaintiffs are correct in asserting that there is an application process, this application process appears to apply only to the permit process, which is discussed above. In the present case, the activities of the Saint Regis Mohawk Tribe do not involve the issuance of a permit. Section 40, Part 22, Subpart G of the CFR provides, in pertinent part, the following: "Section 518(e) of the CWA, 33 U.S.C. § 1378 (sic 1377), authorizes the Administrator to treat an Indian Tribe as eligible to apply for the 404 permit program under section 404(g)(1) if it meets the following criteria ...." *See* 40 C.F.R. Subpart G. As the CFR states, the application process refers to the administration of the general permits outlined in 33 U.S.C. § 1344(g) as opposed to the enforcement provisions outlined in 33 U.S.C. § 1319. Additionally, 33 U.S.C. § 1342 also deals primarily with the permit process.

**14.** In a letter dated June 7, 2000, the EPA responded to several questions posed by the Court. In this letter, the EPA stated that it first became aware of the wetland violation when it received Plaintiffs' Notice of Intent to Sue and that once it "became aware of the violation, the agency encouraged the [Saint Regis Mohawk Tribe] to continue its action, initiated in late 1998, to resolve the wetland violation, but did not oversee it." *See* EPA Response to Inquiries from the District Court, attached to letter from Warren H. Llewellyn, Chief, Water & General Law Branch, dated June 7, 2000 ("EPA Letter"). The EPA further stated that "[i]n late April 1999, counsel for the [Saint Regis Mohawk Tribe] suggested that [the] EPA might 'endorse' an order on consent [that] the [Saint Regis Mohawk Tribe] was preparing[ ]" and that the EPA "declined the invitation in view of [its] lack of knowledge of the situation ...." *Id.* The Saint Regis Mohawk Tribe provided a copy of a draft Order–on–Consent and the EPA provided no formal comments on the Order. *See id.* Additionally, "[o]n or about June 1, 1999, [Saint Regis Mohawk Tribe] leaders and senior EPA Regional officials had a telephone conversation in which the [Saint Regis Mohawk Tribe] reviewed its enforcement actions to date, requested [the] EPA's cooperation and assistance in resolving the violations and requested a meeting with [the] EPA. Such a meeting ... occurred on or about June 25, 1999." *Id.* The EPA further stated that although the Saint Regis Mohawk Tribe's "Order–on–Consent does not fit within the formal framework of the Federal wetlands enforcement program under the CWA[,] .... [the] EPA has acted in this matter in adherence with [the] EPA's Indian Policy of 1984[,] ... [which] is 'intended to provide guidance for

that the EPA refrained from fully prosecuting this action because of the fact that the Saint Regis Mohawk Tribe was prosecuting the action and, at the same time, consulting with the EPA. Moreover, for purposes of this motion, the Court assumes that the Saint Regis Mohawk Tribe satisfies the requirements set-forth in § 1377(e). Accordingly, the Court finds that, given the facts of this case, the Saint Regis Mohawk Tribe may be deemed to have acted like a "State" within the meaning of the CWA.

### c. Diligent Prosecution

Plaintiffs contend that even if the Court finds that the Saint Regis Mohawk Tribe is considered to be a "State" for purposes of the statute, they are still able to maintain their citizen suit because there has not been a diligent prosecution.[15] *See* 33 U.S.C. §§ 1319(g)(6)(A).

"[T]he standard for evaluating the diligence of the state in enforcing its action is a low one which requires due deference to the state's plan of attack . . . ." *Orange Env't, Inc.*, 860 F.Supp. at 1017; *see also Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 777 F.Supp. 173, 183 (D.Conn.1991), *aff'd in part and rev'd in part*, 989 F.2d 1305 (2d Cir.1993) (quoting *Connecticut Fund for the Environment v. Contract Plating Co.*, 631 F.Supp. 1291, 1293 (D.Conn.1986)).

Plaintiffs contend that there was a lack of diligent prosecution which is evidenced by the following: (1) in determining the $5,000 penalty, the Saint Regis Mohawk Tribe did not "take into account the nature, circumstances, extent and gravity of the violation," as required by 33 U.S.C. § 1319(g)(3),[16] nor did it consider the "economic benefit . . . resulting from the violation;" [17] (2) the Consent on Order does not

---

EPA program managers in the conduct of the Agency's congressionally mandated responsibilities.' " *Id.* The EPA also stated that it " 'recognizes Tribal Governments as sovereign entities with primary responsibility for the reservation populace[]' " and that it views " 'Tribal governments as the appropriate non-Federal parties for making decisions and carrying out program responsibilities affecting Indian reservations, their environments and the health and welfare of the reservation populace.' " *Id.* Additionally, in a letter that the Court received from the Saint Regis Mohawk Tribal Council, the Council indicated that "there is a cohesive effort between the EPA and the Tribe in which they are diligently prosecuting the matter internally." *See* Letter to the Court from Members of the Saint Regis Mohawk Tribal Council, dated June 8, 2000.

15. It is also important to note that the Saint Regis Mohawk Tribe must have been acting pursuant to a comparable state law. According to the Order on Consent, the Saint Regis Mohawk Tribe acted pursuant to Title III of the Akwesasne Wetlands Conservation Act and Tribal Council Resolution No. 89–34. *See* Hamelin Aff. at Exh. A. When determining whether a state statute is comparable, courts

have considered whether the statute contains provisions similar to those within § 1319(g). *See e.g., Orange Env't, Inc. v. County of Orange*, 860 F.Supp. 1003, 1015 (S.D.N.Y. 1994); *Idaho Rural Council v. Bosma*, 143 F.Supp.2d 1169 (D.Id.2001) ("In order to qualify as 'a comparable state law,' the Ninth Circuit has held that the provision of state law at issue must be comparable to § 1319(g).")

16. Section 1319(g)(3) provides, in pertinent part, the following:

In determining the amount of any penalty assessed under this subsection, the Administrator or the Secretary, as the case may be, shall take into account the nature, circumstances, extent and gravity of the violation, or violations, and, with respect to the violator, ability to pay, any prior history or such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violation, and such other matters as justice may require.
33 U.S.C. § 1319(g)(3).

17. According to Plaintiffs, by violating the CWA, Defendant "has created a fifteen acre commercial parcel connecting the newly built Saint Regis Mohawk Casino to New York

require Defendant to apply for and receive an after-the-fact CWA § 404 permit and, without this permit, Defendant remains in violation of federal law; and (3) the remediation plan set forth in the Consent on Order requires a CWA § 404 permit for implementation. *See* Pls' Mem. of Law at 11.

■ One factor courts consider when determining whether an enforcement action constitutes a "diligent prosecution" is whether there are provisions to ensure adequate public participation. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 890 F.Supp. 470, 490 (D.S.C.1995). In this instance, the Tribe allowed for public comment for thirty days after the signing of the consent decree and Plaintiffs submitted a letter to the Tribe opposing the consent order, although it was not within the specified time period.[18] *See* Pls' Statement of Material Facts as Exh. C.

■ When a consent order is at issue and a court is considering diligence of prosecution, courts also look at the substantive provisions of the order, including the amount of the penalty assessed compared to the maximum amount that could have been assessed. *See Knee Deep Cattle Co., Inc. v. Bindana Inv. Co. Ltd.*, 94 F.3d 514, 516 (9th Cir.1996) (citing *Citizens for a Better Environment v. UNOCAL*, 83 F.3d 1111, 1115 (9th Cir.1996) (other citation omitted)); *Friends of the Earth, Inc.*, 890 F.Supp. at 490. "The mere fact that a settlement reached by the state is less burdensome to the defendant than the remedy sought in the complaint in the

citizen suit does not establish that the state failed to prosecute its action diligently." *Friends of the Earth, Inc.*, 890 F.Supp. at 490 (citation omitted); *see also Connecticut Coastal Fishermen's Ass'n.*, 777 F.Supp. at 185 (finding that the Connecticut Department of Environmental Protection had diligently prosecuted an action against the defendant even though the action was "more limited in scope than the relief [the] plaintiff [was] requesting."). "However, the lack of substantial relief in a settlement is properly considered by the court in determining whether the state action was diligently prosecuted." *Friends of the Earth, Inc.*, 890 F.Supp. at 490 (citations omitted).

In the present case, as noted, the Saint Regis Mohawk Tribe assessed a penalty of $5,000; it also assessed a mitigation fee in the amount of $20,000. Under the CWA, the maximum amount allowed for a civil penalty is $10,000 per day of the violation.[19] *See* 33 U.S.C. § 1319(g)(2)(B). Moreover, Defendant was required to submit plans for restoration of an intermittent watercourse as well as a wetlands monitoring plan and a sedimentation and erosion control plan.

■ The Court finds that given the facts of this case, including the continuing remedial measures that are being taken by the Saint Regis Mohawk Tribe, the actions of the Tribe constitute diligent prosecution. Accordingly, pursuant to § 1319(g)(6)(A), Plaintiffs are unable to maintain their claim against Defendant. However, there is a limitation to the application of this provision.

---

State Routes 37 and 95." *See* Pls' Mem. of Law at 11.

18. In this letter, Plaintiffs objected to the Order on Consent for the following reasons: (1) "there is a parallel proceeding seeking dissimilar damages and reparations;" (2) "the proposed Order violates the national policy of

zero wetland loss;" and (3) "implementing the Order would result in further violations of Federal law." *See* Pls' Statement of Material Facts at Exh. C.

19. When assessing this daily penalty, the maximum penalty may not exceed $125,000. *See* 33 U.S.C. § 1319(g)(2)(B).

Although not discussed by the parties, courts within this Circuit have held that, in certain situations, when a citizen suit is barred pursuant to § 1319(g)(6)(A), the plaintiff's claim for civil penalties should be dismissed but the plaintiff's claims for injunctive and declaratory relief should not be dismissed on this basis. *See Orange Env't, Inc.*, 860 F.Supp. at 1017–18; *Coalition for a Liveable West Side, Inc. v. New York City Dep't of Envtl. Prot.*, 830 F.Supp. 194, 197 (S.D.N.Y.1993); *New York Coastal Fishermen's Ass'n v. N.Y.C. Dep't of Sanitation*, 772 F.Supp. 162, 169 (S.D.N.Y.1991). Courts have reached this conclusion based primarily upon the language of § 1319(g)(6)(A) which states that when the State is diligently prosecuting an action, or has issued a final order, the violation at issue "shall not be the subject of a **civil penalty** action under . . . section 1365 of this title." 33 U.S.C. § 1319(g)(6)(A) (emphasis added).

In accordance with the relevant case law, the Court grants Defendant's motion for summary judgment with respect to the civil penalties portion of Plaintiffs' claim. However, with respect to the portion of Plaintiffs' claim seeking injunctive and declaratory relief, the Court denies Defendant's motion for summary judgment.[20]

## IV. CONCLUSION

After carefully considering the pleadings in this matter, the parties' submissions and oral arguments and the applicable law, it is hereby

**ORDERED** that Plaintiffs' motion to amend their Complaint is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' are to file such Amended Complaint within **20–days** of the date of this Order; and it is further

---

**20.** Defendant, citing *Orange Env't, Inc. v. County of Orange ("Orange Env't II")*, 923 F.Supp. 529, 538 (S.D.N.Y.1996), also contends that the discharge is non-recurring and, therefore, the lawsuit may not be maintained.

The Supreme Court has recognized that citizen suits under the Clean Water Act are not permitted for wholly past violations because they could "undermine the supplementary role envisioned for the citizen suit." *Gwaltney*, 484 U.S. at 60, 108 S.Ct. 376; *see also Orange Env't II*, 923 F.Supp. at 538. Rather, there must be a "continuous or intermittent violation." *Orange Env't II*, 923 F.Supp. at 535 (citation omitted). "The burden is on the plaintiff to produce evidence of a continuing violation." *Id.* (citation omitted). However, at this stage of the proceedings, "[d]oubts with respect to whether the allegations of continuing violations are a sham are resolved in favor of the citizen-plaintiff[.]" *Connecticut Coastal Fishermen's Ass'n.*, 989 F.2d at 1311.

Plaintiffs contend that an unpermitted discharge of dredged or filled materials into wetlands is a continuing violation of the CWA for as long as the fill remains. *See Informed Citizens United, Inc. v. USX Corp.*, 36 F.Supp.2d 375, 377 (S.D.Tex.1999) (noting

that several courts have found that "a violation is 'continuing' for purposes of the statute until illegally dumped fill material has been removed" (citations omitted)); *Sasser v. Administrator, United States E.P.A.*, 990 F.2d 127, 129 (4th Cir.1993) ("Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation." (citations omitted)); *United States v. Reaves*, 923 F.Supp. 1530, 1534 (M.D.Fla.1996) ("Defendant's unpermitted discharge of dredged or fill materials into wetlands on the site is a continuing violation for as long as the fill remains." (footnote omitted)); *United States v. Cumberland Farms of Conn., Inc.*, 647 F.Supp. 1166, 1183 (D.Mass.1986) ("A day of violation constitutes . . . every day Cumberland allowed illegal fill material to remain therein." (citations omitted)). Plaintiffs further contend that the present case is distinguishable from *Orange Env't II*, 923 F.Supp. at 538.

Given the facts of the present case, including the continued presence of the fill material in the wetlands, the Court refrains from granting Defendant's motion for summary judgment on the basis that there is no longer a continuing violation.

ORDERED that Defendant's motion for summary judgment is **GRANTED** with respect to the portion of the claim in which Plaintiffs seek civil penalties; and it is further

ORDERED that Defendant's motion for summary judgment is **DENIED** with respect to the portion of the claim in which Plaintiffs seek declaratory and injunctive relief; and it is further

ORDERED that this action is **STAYED** until such time that the remediation plan has been completed and has been acted upon by the EPA.

**IT IS SO ORDERED.**